[Crim. No. 4656. Fourth Dist., Div. One. Dec. 30, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
STANTON GAY EDWARDS, Defendant and Appellant.

## COUNSEL

Harold D. Dickstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Lynn A. Schenk, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**WHELAN, J.**—Stanton Gay Edwards, defendant, has appealed from an order committing him to the California Rehabilitation Center following his plea of guilty to a charge of possession of narcotics (Health & Saf. Code, § 11500) after his motion under Penal Code section 1538.5 to suppress evidence had been denied.

At the time of the plea of guilty, a second count charging a violation of Health and Safety Code section 11500.5 was dismissed as the result of a plea bargain.

William A Roosen, food service manager at University Hospital in San Diego, saw defendant the evening of November 16, 1970, come into the kitchen area of University Hospital saying he was looking for someone named Barbara. Roosen told defendant no one by that name worked there and asked defendant to leave. Defendant left after some discussion.

A few minutes later Roosen saw defendant enter the women's restroom in the employees' cafeteria; followed defendant and saw him going through a woman's purse; defendant immediately left the restroom and fled to the parking lot, followed by Roosen, who saw defendant get into a Volkswagen which would not start. Roosen sought out Paul H. Bethel (security officer at University Hospital), who accompanied him back to the parking lot where defendant was still trying to start the car. Bethel told Roosen defendant was enrolled in the methadone program at the hospital. At that point the car started and defendant drove away.

Bethel testified he was told by Roosen about defendant's actions in going through some purses in the women's restroom; accompanied Roosen to the parking lot, and once the Volkswagen was pointed out to him he identified defendant as being on the methadone program, though he did not know him by name. The same evening Bethel reported the incident to the San Diego Police Department; the officer to whom Bethel talked said he would refer the matter to the burglary detail.

On November 17 Bethel saw defendant sitting in the hospital lobby, and went to find Roosen to ask him if he could verify the identity of defendant as the man he had seen the night before.

Roosen came, saw defendant and verified the identity to Bethel, who called the San Diego police, and returned to keep an eye on defendant. He saw defendant sit down in a chair with a jacket over his arm, put on the jacket to go outside where he spoke to an unidentified person, return and place the jacket on the chair to his right.

At that point Officer Warren of the San Diego Police Department arrived.

Officer Warren testified he had a call at 6 p.m. on November 17 to go to University Hospital because a theft suspect was being held there; he previously had learned from the incident log that on November 16 there had been an attempted burglary at the hospital by a man answering defendant's description, who had left in a Volkswagen car the license number of which was given in the report. Upon Officer Warren's arrival Bethel pointed out defendant to Warren, who walked over to defendant and asked if he might speak with him; defendant stood up and said "yes"; as they were moving away from other people in the lobby, Warren asked defendant, "Well, do you want to get your jacket?" to which defendant answered it was not his jacket.

Officer Warren explained to defendant the reason he wished to speak with him and advised him of his Fifth and Sixth Amendment rights; Bethel and Roosen came in; Roosen then identified defendant as the man who had entered the women's restroom.

At the same time Officer Triplett came in from the parking lot where he had looked for the Volkswagen, joined the group, heard Warren ask defendant if the jacket was not his, heard defendant deny it, heard Bethel say he had seen defendant come into the room wearing the jacket, had seen him take it off and lay it down. Officer Triplett was directed by Officer Warren to pick up the jacket, which he did. He searched the jacket and found in it nine bindles separately wrapped, some of which were marked with the figure "5," others with the figure "20," all of which contained heroin. Warren then placed defendant under arrest for burglary and possession of narcotics.

The stated contentions on appeal are based upon the denial of defendant's motion under Penal Code section 1538.5. ▆▆▆ In essence it is claimed there was no probable cause at the time of arrest to believe a felony had been committed; that defendant's conduct on November 16 was at most evidence of petty theft, a misdemeanor, for which the officer, who was not a witness to the act, might not make a warrantless arrest; and that in any event the search of the jacket without a warrant was unreasonable under the rule of *Chimel* v. *California*, 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034].

When the jacket was searched, Officer Warren under whose direction Triplett acted, had probable cause to arrest defendant for burglary. He

had information through official channels that a burglary was suspected at University Hospital on November 16 and that the person suspected as the burglar was at the hospital on November 17; on Officer Warren's arrival at the hospital Bethel pointed out defendant as the person seen rifling a woman's purse; Roosen, the eye-witness to that incident, confirmed the identification. All that gave Warren probable cause to believe a burglary had been committed and that defendant had committed it.

■ A person is guilty of burglary who enters a room with the intention to commit a theft. (Pen. Code, § 459; *People* v. *Young,* 65 Cal. 225 [3 P. 813]; *People* v. *Davis,* 1 Cal.App. 8 [81 P. 716, 88 P. 1101].)

This is so even though permission to enter has been extended to him personally or as a member of the public. (*People* v. *Deptula,* 58 Cal.2d 225, 228 [23 Cal.Rptr. 366, 373 P.2d 430].) The entry need not constitute a trespass. (*People* v. *Sears,* 62 Cal.2d 737, 746 [44 Cal.Rptr. 330, 401 P.2d 938]; *People* v. *Deptula, supra,* at p. 228; *People* v. *Wilson,* 160 Cal.App.2d 606, 608 [325 P.2d 106]; *People* v. *Garrow,* 130 Cal. App.2d 75, 83 [278 P.2d 475].)

Consequently, defendant's presence in the hospital as a participant in the methadone program of the hospital is not inconsistent with a burglarious entry.

■ As an incident to the lawful arrest, a search of defendant's person was permitted and not unreasonable. A search of defendant's person included the clothing immediately on his person.

In the circumstances then present, the right of search extended also to the jacket. The circumstances were these: the arrest was in a public place where defendant was only transiently present; the police officer's reliable information was that defendant wore the jacket into the room, removed it and placed it on a chair in immediate proximity to himself where the officer saw it; there were other people in the room not within the group of the police and their informants; the jacket was easily portable.

In those circumstances the jacket was to be considered a part of the clothing worn by defendant at the time of arrest and search, as it would have been had he been arrested as he sat with the jacket along side him.

■ So long as an arrest that follows a search is not sought to be justified by what the search discovers, but rests upon probable cause independent of the search, a search made at the time and place of arrest may precede the arrest. (*Curry* v. *Superior Court,* 7 Cal.App.3d 836, 850 [86 Cal.Rptr.

844]; *People* v. *Doherty,* 67 Cal.2d 9, 22 [59 Cal.Rptr. 857, 429 P.2d 177].)

The order appealed from is affirmed.

Brown (Gerald), P. J., and Coughlin, J.,* concurred.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.