[No. C027915. Third Dist. June 23, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
LESTER PAUL ELSEY, Defendant and Appellant.

**COUNSEL**

Meredith J. Watts, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Shirley A. Nelson and Catherine G. Tennant, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KOLKEY, J.—**

## I. INTRODUCTION

In this appeal, we consider whether entry into six rooms at a single school constitutes six separate burglaries under Penal Code section 459.[1]

A jury convicted defendant Lester Paul Elsey (defendant) of six counts of second degree burglary based upon his entry into five classrooms and the main office area of a middle school in Shasta County. He was sentenced to state prison for concurrent terms of two years on each count. On appeal, defendant contends that the trial court erred in instructing the jury that "each classroom and the main office constitute[d] a separate building" for purposes

---

[1] All further statutory references are to the Penal Code unless designated otherwise.

of the burglary statute. He argues that the evidence is insufficient to establish "more than a single burglary of the school."

We conclude that defendant was properly convicted of six counts of burglary. Both the statute's plain language and its purpose support such a determination. First, defendant's entry into separate rooms—assigned to different people, locked to the outside, and largely located in separate buildings on the school campus—constituted separate burglaries within the plain language of the California burglary statute, section 459, which defines burglary as the entry into "any . . . room . . . with intent to commit grand or petit larceny or any felony." Second, the purpose of the statute, which is to protect against the danger of unauthorized entries, is furthered if each intrusion into a separately secured room, whose occupants have an independent expectation of protection against intrusion, constitutes a separate burglary. Where strict adherence to a statute's plain language also furthers its statutory purpose, such an interpretation can be safely said to effectuate its legislative intent. Conversely, nothing in the statutory language or purpose of section 459 suggests that separate entries, each with the requisite intent, into multiple secured classrooms should be viewed as the equivalent of a single entry into a single classroom, and thus, only one burglary. Otherwise, a burglar who enters various secured offices and classrooms located throughout a university campus would be guilty of only one burglary. That is not the law in California. Accordingly, we shall affirm the judgment.

## II.  Factual and Procedural Background

Central Valley Intermediate School (CVI) was scheduled to hold its Medieval Festival on Friday, April 11, 1997. In preparation, tables and chairs for the festival's culminating "feast"—a lunch for 500 students and guests—were borrowed and set up outside on Thursday night.

Joe Brouillard, the principal at CVI during 1997, contacted Statewide Security to guard the borrowed items from 10:00 p.m. on Thursday, April 10 until 6:30 a.m. on Friday. Two guards from Statewide Security, defendant and Richard Maddox, duly arrived at 10:00 p.m. on Thursday. Principal Brouillard gave them a set of keys so that they could use the staff room, where there were restrooms, a telephone, and a soda machine. Although the keys also afforded entry into all of the rooms on the school campus, defendant and Maddox were not given permission to enter any other room.

As described by Principal Brouillard, the school's general physical layout consists of "an older building" in one corner, "three different wings connected with a fourth wing that runs north and south," and "three new portables . . . on the east south side."

Both the wings and portables contain classrooms. Each classroom has an outside door, which must be unlocked to gain access from the outside. Certain classrooms also have connecting doors to an adjoining classroom, which are closed but not locked.

The school's office complex and staff room are in the older building. From the record, it appears that the wings are not connected by enclosed hallways to the older building.

About midday on Friday, the food service clerk, Alexandra Bjordquist, informed Brouillard that lunch money collected from the students was missing from her desk. Later that day, Brouillard also learned that money was missing from classroom 10 and that classroom 16 had been broken into.

On Monday, Brouillard directed the school staff to determine whether anything else had been taken. Additional thefts were reported, consisting of a camcorder from classroom 6, small tool kits from classrooms 7 and 8, antique rifles, knives, and replicas of currency from classroom 16, and money from classroom 18.

Although there was testimony regarding thefts from additional locations, the People relied upon defendant's entry into classrooms 6, 7, 8, 16, and 18, and the theft from the food service clerk's desk near the main office to support six burglary charges. Classrooms 6, 7, 8, and 16 are in the wings, though not all in the same wing; classroom 18 is in one of the portables; and the food service clerk's desk is in the older building.

Maddox, who pleaded to one count of burglary in exchange for a grant of probation conditioned upon his testifying truthfully at defendant's trial, testified that he and defendant were responsible for the thefts. According to Maddox, before entering the classrooms, he and defendant devised a plan to take items from rooms in the school and pawn them.

The two men first used a key to open the locked door of classroom 16, from which they took three knives and two rifles. Classroom 16 has two locked doors, one to the "main hallway" in the "upper wing" and the other leading downhill to a field.

Maddox and defendant next entered two connecting classrooms, classrooms 7 and 8, through the locked outside door to classroom 7. They entered the second classroom through the closed, but unlocked, connecting door between the classrooms, after moving a large roll of paper that was in front of the door. They took a tool kit from each classroom.

Maddox and defendant then used the key to enter classroom 6 through one of its locked doors and took a camcorder.

Maddox next saw defendant enter the office in the older building and a couple more rooms. Although Maddox did not accompany him, he knew that defendant had taken money from some of them because he subsequently observed defendant counting the money in the car. As mentioned, the food service clerk discovered that money was missing from her desk near the office in the older building.

Finally, Maddox testified that he saw defendant enter classroom 18, the home economics room, using a key. Classroom 18, located in the portable building, has two doors. One is locked to the outside; the other door is an internal one that connects to the next classroom, but it was blocked by furniture and was not functional. Jan Armstrong-Gifford, a teacher in the home economics room, found approximately $100 missing from her desk.

Defendant did not testify.

In a pretrial motion, the People set forth their theory of the case: Defendant was guilty of six burglaries because he burgled six separate areas, each of which required a separate entry. In support of this theory, the People cited the following passage from *People v. Thomas* (1991) 235 Cal.App.3d 899 [1 Cal.Rptr.2d 434]: "[W]here a burglar enters several rooms in a single structure, each with felonious intent, and steals something from each, ordinarily he or she cannot be charged with multiple burglaries and punished separately for each room burgled *unless* each room constituted a separate, individual dwelling place within the meaning of section 459 and 460." (*Id.* at p. 906, fn. 2, original italics.)

Apparently accepting the People's theory that this case fell within the exception cited above, and in addition to instructing the jury on the elements of burglary, the court instructed it as follows: "For purposes of this case, each classroom and the main office constitutes a separate building."

Defendant contends that the challenged instruction was an incorrect statement of the law. He urges that there was but one burglary because only a single school was entered and "it is irrelevant that the school burgled was made up of multiple buildings and portables."[2]

We conclude that the challenged instruction was a correct statement of the law on the facts of this case.

---

[2]Defendant did not object to the challenged instruction at trial. However, pursuant to section 1259, an "appellate court may . . . review any instruction given . . . even though no objection was made thereto in the lower court, if the substantial rights of the defendant were

## III. Discussion

### A. *The Language of the Burglary Statute*

Statutory burglary in California, defined in section 459, vastly expands upon the common law definition, which limited the crime to the "breaking and entering of a dwelling in the nighttime." (*People v. Davis* (1998) 18 Cal.4th 712, 720 [76 Cal.Rptr.2d 770, 958 P.2d 1083].) ■ In contrast, in California, "[t]here is no requirement of a breaking; an entry alone is sufficient. The crime is not limited to dwellings, but includes entry into a wide variety of structures. The crime need not be committed at night." (*Id.* at pp. 720-721.)

Section 459, in pertinent part, states the elements of burglary as follows: "Every person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building . . . with intent to commit grand or petit larceny or any felony is guilty of burglary. . . ."[3]

Accordingly, section 459 defines the entry into "any . . . room" with larcenous or felonious intent as a burglary. ■ Thus, the plain language of the statute supports the trial court's instruction that entry into each room with the requisite intent constitutes a separate burglary. ■ And ordinarily, the words of a statute "provide the most reliable indicator of legislative intent." (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 871 [39 Cal.Rptr.2d 824, 891 P.2d 804].)

■ Further, the use of the word, "room," in the burglary statute was intended to broaden the definition of burglary, not constrict it. As the California Supreme Court in *People v. Stickman* (1867) 34 Cal. 242, 245 (*Stickman*), explained, the Legislature amended the statute in 1858 to replace the words " 'any dwelling house, or any house whatever' " with the "words 'any house, room, apartment or tenement.' " The amendment "was not made for the purpose of narrowing the previous definition, but with the intent to leave it as broad as at first and to meet the doctrine advanced by some cases,

---

affected thereby." Substantial rights are affected if the error "result[s] in a miscarriage of justice, [i.e.,] making it reasonably probable defendant would have obtained a more favorable result in the absence of error." (*People v. Andersen* (1994) 26 Cal.App.4th 1241, 1249 [32 Cal.Rptr.2d 442].) Manifestly, an instruction that would lead to six burglary convictions, rather than one, affects a defendant's substantial rights.

[3]Section 460, in turn, divides the offense of burglary into two degrees based upon whether the structure entered was "inhabited": "(a) Every burglary of an inhabited dwelling house, . . . or the inhabited portion of any other building, is burglary of the first degree. [¶] (b) All other kinds of burglary are of the second degree."

that an entry into an unoccupied room or apartment of a dwelling house was not a burglary." (*Ibid.*) The Supreme Court in *Stickman* went on to say, in a famous passage, that the language of the statute "could not well be made more comprehensive, and we think the absence of more particular terms of description indicates an intention, on the part of the Legislature, to include every kind of buildings or structures 'housed in' or roofed, regardless of the fact whether they are at the time, or ever have been, inhabited by members of the human family." (*Ibid.*)

We acknowledge, however, that the fact that the amendment to the statute's language was meant to broaden its coverage to "every kind" of "roofed" structure does not necessarily mean that it was intended to provide a basis for multiple charges of burglary once a covered structure was entered. We thus turn to the case law construing the statute.

B. *Cases Construing the Burglary Statute*

Since the 1858 amendment of the burglary statute, California cases have concluded that entry into any type of room with the requisite intent constitutes a burglary. (See *People v. Young* (1884) 65 Cal. 225, 226 [3 P. 813] [burglary by entry into a ticket office in a railroad station separated by an eight- or nine-foot-high partition from waiting room]; *People v. Davis* (1905) 1 Cal.App. 8, 10 [81 P. 716] [burglary by entry of room of inmate of house of ill repute]; *People v. Carkeek* (1939) 35 Cal.App.2d 499, 502 [96 P.2d 132] [entry into an office was a burglary in that "an entry into a 'room' with the necessary intent makes out a case of burglary under section 459"]; *People v. Garcia* (1963) 214 Cal.App.2d 681, 683 [29 Cal.Rptr. 609] [burglary by entry of liquor cage in a store affirmed because "[i]n any event, a room within a building may be burglarized"], disapproved on other grounds in *Mozzetti v. Superior Court* (1971) 4 Cal.3d 699, 703 & 706 [94 Cal.Rptr. 412, 484 P.2d 84]; *People v. Edwards* (1971) 22 Cal.App.3d 598, 602 [99 Cal.Rptr. 516] [burglary by entry into women's restroom at hospital to rifle purses]; *People v. Wilson* (1989) 208 Cal.App.3d 611, 615 [256 Cal.Rptr. 422] [entry into a locked rented room in a house was entry of a separate residence within the meaning of § 460]; *People v. Mackabee* (1989) 214 Cal.App.3d 1250, 1253 [263 Cal.Rptr. 183] ["we conclude an office space in the lobby of a public building, separated from the lobby by a waist-high counter, is a 'room' for purposes of the burglary statute, section 459"]; *People v. Thomas, supra,* 235 Cal.App.3d at p. 904 ["any person who enters a house or an inhabited dwelling, *or a room in such a house or dwelling*, with the intent to commit theft, is guilty of burglary"]; *People v. McCormack* (1991) 234 Cal.App.3d 253, 256 [285 Cal.Rptr. 504] [section 459 "plainly states [that] entry into a room with intent to steal is burglary"].)

If entry into a "room" within a building with the requisite intent can constitute a burglary, it would appear to follow that entry into multiple rooms with such intent would support multiple charges of burglary. Indeed, California courts have affirmed separate burglary convictions for entry into separate rooms in a single structure, whether it be student dormitory rooms within interconnected buildings (*People v. O'Keefe* (1990) 222 Cal.App.3d 517, 521 [271 Cal.Rptr. 769], cert. den. *sub nom. O'Keefe v. California* (1991) 500 U.S. 920 [111 S.Ct. 2022, 114 L.Ed.2d 108]), or separately leased and locked offices in a small office building (*People v. Church* (1989) 215 Cal.App.3d 1151, 1159 [264 Cal.Rptr. 49] [evidence supported four separate burglaries of four separately leased and locked offices in a small office building], disapproved on another ground in *People v. Bouzas* (1991) 53 Cal.3d 467, 477-480 [279 Cal.Rptr. 847, 807 P.2d 1076]; see also *People v. James* (1977) 19 Cal.3d 99, 119 [137 Cal.Rptr. 447, 561 P.2d 1135].)

For instance, in affirming defendant's conviction on four burglary counts for entry into four student dormitory rooms in three interconnected buildings, the Court of Appeal in *People v. O'Keefe, supra,* 222 Cal.App.3d at page 521, explained: "[Defendant's] analogy of life in a student dormitory with life in a single-family residence does not apply. . . . At Nease Hall each student lives and enjoys separate privacy in each of their individual dormitory rooms. These rooms are their homes while attending school. Unauthorized entry into each dormitory room presents a new and separate danger to each of the occupants. Accordingly, individual dormitory rooms and the students who occupy them are entitled to protection under the meaning of section 459."

Similarly, in rejecting defendant's contention that sentencing him on three burglary counts violated the statutory prohibition against multiple punishment under section 654, the California Supreme Court in *People v. James, supra,* 19 Cal.3d at page 119, explained: "Here defendant forcibly broke into three different rented premises occupied by tenants who had no common interest other than the fortuitous circumstance that they happened to lease office suites in the same commercial building. There is no doubt that if the premises had been located in three separate buildings defendant could have been punished for three separate burglaries; he is not entitled to two exempt burglaries merely because his victims chose the same landlord. If the rule were otherwise, a thief who broke into and ransacked every store in a shopping center under one roof, or every apartment in an apartment building, or every room or suite in a hotel, could claim immunity for all but one of the burglaries thus perpetrated." (Fn. omitted.)

Indeed, even multiple entries into the *same* structure or room have been held to be separate burglaries. (See *People v. Washington* (1996) 50

Cal.App.4th 568, 578-579 [57 Cal.Rptr.2d 774] [§ 459 crime is complete upon entry with intent to commit larceny or a felony; "[i]t follows, therefore, that every entry with the requisite intent supports a separate conviction"]; *In re William S.* (1989) 208 Cal.App.3d 313, 317 [256 Cal.Rptr. 64] [evidence of two entries several hours apart constituted two burglaries]; but see *People v. Montoya* (1994) 7 Cal.4th 1027, 1045-1046 & fn. 10 [31 Cal.Rptr.2d 128, 874 P.2d 903] [where burglar, who "made several [entries] and exits of the burgled dwelling during the course of a single burglary," was charged with only one burglary, the Supreme Court said it need not consider whether multiple burglaries could be pleaded or proved].)

## C. *Application of the Case Law to This Appeal*

■ Defendant argues that "[d]ifferent rooms within the school were not separate dwelling places, and so therefore, entering into each was not a separate burglary under . . . *O'Keefe* [involving student dormitories]." He distinguishes *People v. James, supra,* 19 Cal.3d 99, which involved three counts of burglary for entry into three different leased offices in a single commercial building, on the ground that in this case, defendant was "not burglarizing a different commercial space each time [he] entered a new schoolroom."

Accordingly, the issue facing us is whether defendant's entry into separately secured classrooms and an office, largely in separate buildings, should be treated any differently than separate dormitories or leased premises in single or interconnected structures. The plain language of the statute, prohibiting entry into "any" house, room, or other building with burglarious intent, would support the conclusion that each entry with the requisite intent constituted a separate burglary.

However, we recognize the California Supreme Court's citation in *People v. James, supra,* 19 Cal.3d at page 119, to its earlier dictum in *People v. Bauer* (1969) 1 Cal.3d 368, 378 [82 Cal.Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398], "to the effect that a thief who enters a house and steals articles belonging to different members of the same family can be punished for only one burglary." (*People v. James, supra,* 19 Cal.3d at p. 119.) This dictum arguably presents a circumstance where entry into separate rooms does not lead to punishment for separate burglaries, notwithstanding the language of section 459.

Of similar import is the dictum in *People v. Thomas, supra,* 235 Cal.App.3d at page 906, footnote 2, which was the basis for the challenged instruction in this case: "[W]here a burglar enters several rooms in a single

structure, each with felonious intent, and steals something from each, ordinarily he or she cannot be charged with multiple burglaries and punished separately for each room burgled *unless* each room constituted a separate, individual dwelling place within the meaning of sections 459 and 460." (Original italics.) No authority, however, was cited by the *Thomas* court for this dictum, and the defendant in that case was not charged with multiple burglaries, but with a single burglary for breaking into the living quarters of a house.

Assuming, without deciding, the correctness of such dicta, we do not find any inconsistency between the high court's dicta that burglary of a single home can only be punished as a single burglary and the conclusion that multiple burglaries can be charged for the entry, with the requisite intent, of the multiple classrooms here.

First, the state high court's discussion in both *People v. James* and *People v. Bauer* to the effect "that a thief who enters a house and steals articles belonging to different members of the same family can be punished for only one burglary" (*People v. James, supra,* 19 Cal.3d at p. 119) concerned not the statutory definition of burglary, but the ban on multiple punishments for an indivisible course of conduct pursuant to section 654.[4] (*People v. Bauer, supra,* 1 Cal.3d at p. 378; *People v. James, supra,* 19 Cal.3d at p. 119.) Section 654, however, does not preclude charging and convicting a defendant for multiple *violations* based on different acts, but rather prohibits multiple *punishments* for an indivisible course of conduct that is punishable in different ways. (*People v. Tideman* (1962) 57 Cal.2d 574, 586-587 [21 Cal.Rptr. 207, 370 P.2d 1007] ["section 654 prohibits multiple *punishments* for a single act, but like the jeopardy doctrine, has no application to multiple *convictions* as such, *in a single prosecution*" (original italics)].) To the extent that multiple entries within a single structure on a single occasion may lead to multiple burglary counts, application of section 654 will limit the punishment therefor. (See *People v. Washington, supra,* 50 Cal.App.4th at p. 578 ["concern about absurd results is better resolved under section 654, which limits the punishment for separate offenses committed during a single transaction, than by a rule that, in effect, creates the new crime of continuous burglary"].)

Second, and still assuming, without deciding, the correctness of the dicta, the statutory language under section 459 supports a distinction between

---

[4] Section 654, subdivision (a), presently provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. . . ." At the time of the dicta, section 654, while different in some respects, still barred multiple punishment for an indivisible course of conduct.

treating entry into a house as a single burglary and treating entry into multiple locked classrooms as multiple burglaries. The burglary statute provides in pertinent part that "[E]very person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building . . . with intent to commit grand or petit larceny or any felony is guilty of burglary." Since entry into a "house" with the requisite intent constitutes a burglary under the plain language of this statute, it would be redundant to claim that entry into the rooms of the house constitutes additional burglaries. The larger category subsumes the smaller. Of course, where the "house" may have been entered without the requisite intent, entry into the broader category does not constitute the burglary, allowing the courts to focus on an entry into a room in the house, with the requisite intent, as the basis for the burglary. (E.g., *People v. Thomas, supra,* 235 Cal.App.3d at p. 904; *People v. Wilson, supra,* 208 Cal.App.3d 611.) On the other hand, there is no specific category that encompasses defendant's entry onto a school campus which would subsume the entries into the classrooms, with the possible exception of the phrase, "or other building." But the term, "other building," is a catch-all phrase that follows a list of specific items, which is meant not to describe a particular structure but to incorporate additional structures of the type previously listed, in accordance with the canon of statutory construction, ejusdem generis. In short, the term "other building" is intended to expand the definition of burglary to cover structures beyond those listed; it was not meant to bar multiple counts of burglary based on multiple entries into separate offices, apartments, or rooms, simply because they happen to be inside a larger structure. Indeed, as we have seen, separate entries into multiple rooms or offices within a building have not been treated as a single burglary. (See, e.g., *People v. O'Keefe, supra,* 222 Cal.App.3d at p. 521; *People v. Church, supra,* 215 Cal.App.3d at p. 1159.) Thus, the language of section 459 supports a distinction between burglary of a house and burglaries of multiple classrooms on a school campus.

Third, and still assuming, without deciding, the correctness of the dicta that burglary of a single house constitutes a single burglary, the purpose underlying section 459 supports a distinction between entry into multiple rooms in a single-family house and the entries into multiple secured class-rooms at CVI. The burglary statute is meant to protect against the heightened risk to persons and property interests created by an unauthorized intrusion. (*People v. Montoya, supra,* 7 Cal.4th at p. 1042.) As the case law suggests, the "comprehensive" language of the statute—prohibiting wrongful entry into "any house, room, apartment, tenement, shop, warehouse, store, . . . or other building"—is meant to protect both inhabited and uninhabited struc-tures for which there is a reasonable expectation of protection against intrusion, despite the burglar's presence just outside the structure. (*People v.*

*Nible* (1988) 200 Cal.App.3d 838 [247 Cal.Rptr. 396]; *People v. Mackabee, supra,* 214 Cal.App.3d at p. 1257; *People v. Thomas, supra,* 235 Cal.App.3d at pp. 906-907; see *People v. McCormack, supra,* 234 Cal.App.3d at pp. 256-257.) While occupants of separately locked rooms or offices in a commercial building have a separate expectation of protection from intrusion that does not diminish when a neighboring office or room has been entered, the size of the average single-family house does not ordinarily support an expectation of protection against intrusion in one part of the house if a burglar has invaded another.

■ As we said in *People v. Nible, supra,* 200 Cal.App.3d 838, in a somewhat different context, because "the burglary statute is designed to protect against unauthorized entry and its attendant dangers, the ultimate test of whether a burglarious entry has occurred must focus on the protection that the owners or inhabitants of a structure reasonably expect. The proper question is whether the nature of a structure's composition is such that a reasonable person would expect some protection from unauthorized intrusions. A structure with a locked door or window clearly affords a reasonable protection from invasion." (*Id.* at p. 844.)

Thus, even an area enclosed by a counter can constitute a room which the burglary statute protects from intrusion: "Employees who work behind counters have a reasonable expectation that the public will not enter there, and members of the public know they may not go behind counters without permission. . . . We therefore conclude the area enclosed by the counter was a 'room' within the meaning of section 459." (*People v. Mackabee, supra,* 214 Cal.App.3d at p. 1258.)

Likewise, where a defendant was assumed to have formed the intent to steal after he entered a garage, but before he broke into the kitchen to which the garage was attached, the Court of Appeal considered the separate expectation of protection which the homeowners had in their living quarters, and rejected defendant's argument that he had to have a felonious intent at the time he entered the garage in order to be guilty of burglary: "The kitchen was separate from the garage. It was protected and secured by a locked door which [defendant] forced open with a crowbar. The [homeowners'] expectation of privacy and security within their living quarters was clearly greater than that in their garage, even if the garage may be considered part of the entire dwelling for burglary purposes. In our opinion, it would defeat the purposes of the burglary statute to hold in this case that [defendant] could not be found guilty of burglary unless it was shown that he conceived his felonious intent prior to entering the garage, as opposed to breaking into the house itself." (*People v. Thomas, supra,* 235 Cal.App.3d at pp. 906-907.)

Applying our analysis in *People v. Nible, supra,* 200 Cal.App.3d 838, family members living in the same house together are not likely to have a

separate or different expectation of protection against unauthorized entry as to each interior room once the house itself has been violated: Family members are unlikely to lock interior doors against each other; they share common access to all rooms within the house; and the size of an average single-family house does not ordinarily support an expectation of protection against intrusion in one part of the house if a burglar has already invaded another.

By contrast, the occupants of separately leased and locked offices in the same building, as in *People v. Church, supra,* 215 Cal.App.3d at page 1159, or of separate secured dormitory rooms, as in *People v. O'Keefe, supra,* 222 Cal.App.3d 517, have a separate expectation of protection from intrusion that is not diminished once a burglar enters a neighboring office or dormitory room. Hence, while the underlying objective of the burglary statute may not be furthered by a finding of multiple burglaries from the single entry into a house, it certainly is furthered by a finding of multiple burglaries by reason of separate entries into individually secured classrooms dispersed among several buildings on a school campus.

Based on the record before us, the occupants of each classroom or office at CVI had a separate expectation of protection against an unauthorized entry, notwithstanding defendant's intrusion into other rooms on the CVI campus. (See *People v. Nible, supra,* 200 Cal.App.3d at p. 845.) The office and classrooms at CVI were assigned to different people, locked to the outside, and located to a great extent in separate buildings on the school campus. Defendant entered five of the six rooms from the outside through doors that were kept locked to the outside. (The exception was classroom 8, which will be discussed shortly.) The uncontradicted evidence was that teachers had a reasonable expectation of protection against intrusion with respect to each individual classroom. For example, Ms. Armstrong-Gifford, the home economics teacher, testified that on the evening of Thursday, April 10, she left her classroom several times to help decorate the gym for the Medieval Festival, each time locking her room. She testified that ". . . I have my keys on [my] wrist, and even if I'm going to the restroom between class I lock my room." Mr. Anderson in classroom 16 also testified that the doors of his classroom were ". . . always locked when I'm not there."[5]

Only classroom 8 was entered from an inside door. Defendant entered through an obstructed door in classroom 7. However, the usual entry into

---

[5]Although burglary can occur even if the burglar enters an unlocked door or open window (see *People v. Nible, supra,* 200 Cal.App.3d at p. 844), courts have recognized the significance of a locked door in determining whether multiple entries within a single structure constitute multiple burglaries. (See, e.g., *People v. O'Keefe, supra,* 222 Cal.App.3d at p. 521 ["Each room also has separate locks and the occupants of the rooms have the right to exclude others."].) The Model Penal Code also acknowledges the separateness of a locked space, defining burglary, inter alia, as entry of a "separately secured . . . portion" of a building.

classroom 8, like the other classrooms, was through an outside door that was locked. Nothing in the record suggests any lesser expectation of protection from intrusion associated with classroom 8.

Accordingly, both the plain language and the underlying purpose of the burglary statute support convicting defendant of separate burglaries for each entry into a secured room assigned to a different person and largely located in a different building on the CVI school campus, as long as he had the requisite intent. Moreover, as mentioned earlier, absolutely nothing in the language of the statute suggests an immunity for additional intrusions into additional, secured rooms simply because an initial intrusion of a different room had already occurred. As the court in *People v. McCormack* concluded, "[a]pplying the plain language of the statute . . . serves rather than frustrates the policy of the law." (*People v. McCormack, supra,* 234 Cal.App.3d at p. 257.) And where strict adherence to the plain language of the statute also furthers its statutory purpose, such an interpretation can be safely said to effectuate its legislative intent.

Defendant nonetheless contends that "it is irrelevant that the school burgled was made up of multiple buildings and portables. The whole school was fenced, and [defendant] would argue it was a 'unit' for second degree burglary purposes."

There is no support for this proposition in either the language or purpose of the burglary statute. Were it otherwise—that is, if defendant is correct that "it is irrelevant that the school burgled was made up of multiple buildings and portables"—a burglar who moved through a campus of the University of California, entering various classrooms and offices in various buildings to steal or commit a felony, would be guilty of a single burglary. Likewise, a thief breaking into separate locked offices of a law firm occupying one or more floors of a commercial building would be guilty of only one burglary. And a burglar stealing from separate justices' chambers in a single courthouse would not be guilty of more than one burglary. This is not the law of California, and finds no support in the language or purpose of the burglary statute, which protects the occupants of any "room" not otherwise specified in the statute, from entry by a person with burglarious intent.

Defendant also argues that while "entry into separate 'individual dwelling places' within a single building" can constitute separate first degree burglaries "because of the overriding public policy of protecting occupants from

(Model Pen. Code, § 221.1.) The commentary to this section of the Model Penal Code observes that "[i]t is the individual unit as well as the overall structure that must be safeguarded." (Model Pen. Code & Commentaries, com. 3 to § 221.1, p. 73.)

physical harm which underpins the first degree burglary statute," such a rationale does not apply to second degree burglary.

To the contrary, although the law distinguishes between inhabited and uninhabited buildings for purposes of first and second degree burglary (§ 460),[6] the statutory definition of burglary makes no such distinction (§ 459); only the degree of the burglary is affected by habitation. ■ In fact, our state Supreme Court has rejected the contention that the purpose underlying the burglary statute—and thus its interpretation—changes if the building is not inhabited: "Although entry into an *inhabited* structure is recognized as most dangerous and most likely to create personal injury, justifying assignment of the greater degree [citations], some risk of danger to human life and safety exists whether or not the structure is inhabited, because the intrusion may give rise to a confrontation between the intruder and persons lawfully on the premises." (*People v. Montoya, supra,* 7 Cal.4th at p. 1043, original italics.)

Finally, defendant argues that "[f]or purposes of determining when the crime of burglary is completed for a charge of second degree burglary . . . , the court must look to the 'boundary' approach, by which the simple entry into the off limits area of the school was the burglary, after which taking of items from separate classrooms . . . were not new and separate second degree burglaries."

However, the "boundary" approach, also called the "air space" test, recognized in *People v. Wise* (1994) 25 Cal.App.4th 339, 345 [30 Cal.Rptr.2d 413], "examines whether the defendant [has] crossed the boundary separating the interior air space of the building from the outdoors" for purposes of determining whether an entry has taken place under the burglary statute. (*Ibid.*) This appeal does not concern whether the defendant penetrated the outer boundary of a building for purposes of a burglary; he clearly did. Rather, it concerns whether separate entries into multiple secured rooms with burglarious intent constitute more than one burglary.[7]

■ We conclude that defendant's entry into separate rooms—assigned to different people, locked to the outside, and largely located in different buildings on a school campus—constituted separate burglaries within the meaning of section 459.

---

[6]See footnote 3, *ante.*

[7]Further, this court has rejected the "boundary" test as "inadequate as a comprehensive test for determining when a burglarious entry occurs." (*People v. Nible, supra,* 200 Cal.App.3d at p. 844; see *People v. Wise, supra,* 25 Cal.App.4th at p. 347 [noting that this court has rejected the " 'boundary' approach as inadequate and imprecise"].)

## DISPOSITION

The judgment is affirmed.

Sims, Acting P. J., and Callahan, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 3, 2000.