Filed 5/2/14  In re M.P. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re M.P., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>M.P.,<br><br>        Defendant and Appellant. | A137855<br><br>(Alameda County<br>Super. Ct. No. SJ0801010809) |

The juvenile court found true in a delinquency proceeding (Welf. & Inst. Code, § 602, subd. (a)) that appellant M.P. committed two first degree burglaries (Pen. Code, §§ 459; 460, subd (a)).[1]  Appellant contends the evidence was insufficient to sustain the court's findings.  We affirm, but we remand the matter to the juvenile court to correct an error in the disposition order.

## I.  FACTS

Miao Miao Wang rented a room in a home located at 351 Faxon Avenue in San Francisco.  On November 9, 2012, she left her room sometime after 8:00 a.m. to go shopping.  She locked the door to the room when she left.  She returned around noon to

_____

[1] All further statutory references are to the Penal Code.

1

find the house was a "big mess" and that the door to her room was "broken." Her laptop computer was missing along with its case and a black suitcase.

Bai Chong Liao owned and also lived in the home at 351 Faxon. He too was out of the house on the morning of November 9. He returned home when Wang called him to report the break-in. Liao found the house in disarray and that two doors were broken. He was able to tell that a gun was missing. He later discovered other items were missing—a tape recorder, a home safe, a passport, and a backpack. The intruders had also removed the quarters from a piggy bank and placed them in a plastic bag, but they had left the bag behind.

A neighbor had a video surveillance system that captured a view of the sidewalk in front of 351 Faxon. The system had three different cameras focused on three different angles. The system recorded continuously and stored 30 days of footage on a hard drive.

The neighbor showed the video captured the morning of November 9 to the police. The police downloaded the portion of the video they believed was relevant to their investigation. That portion showed a car arriving and parking at the curb near 351 Faxon at approximately 8:30 am.[2] A man emerges from the car and proceeds toward the front of 351 Faxon. There are two, side-by-side walkways (appellant characterizes them as "inset areas") at the front of 351 Faxon: one goes toward a door on the first (garage) floor, and the second goes toward stairs leading to the second floor. The man enters the inset areas.

The man is off-screen for approximately two minutes before he returns to the car. A different man gets out of the car and goes into the inset areas. He is off-screen for a short time. The first man and a third man get out of the car. The man who was off-screen rejoins them and they mill about on the sidewalk for a few minutes. One man disappears again toward the front of the buildings. Meanwhile a passing vehicle stops and the remaining two men go out into the street and approach the vehicle. After a brief

---

[2] The video is stamped with the date and time. The time, however, is off by an hour because the neighbor apparently did not adjust the system for the end of daylight savings time. We use the stamped time minus one hour in our statement of facts.

2

meeting at the driver's side window, they immediately return to the sidewalk and enter the inset areas. After the passage of few minutes, all three men come out carrying items which they place in the trunk of their car. They make multiple trips, singly or in combination. The items appear to include a black suitcase, a smaller white case, and a backpack. Eventually the men get back into the car and leave at around 8:47 a.m.

Officer Antron Barron of the San Francisco Police Department worked out of the department's Northern Station as a housing officer. His assignment was to patrol the housing developments managed by the city's housing authority in his territory. As a result, he knew many of the residents of the housing developments and their visitors, including appellant, whom Barron had known for about three years.

Officer Barron was asked to look at the surveillance system video because a fingerprint from one Patrick Rushing was found at 351 Faxon. Rushing was an individual known to Northern District officers. Barron was able to identify all three men in the video—Rushing, Lee Farley, and appellant. Although appellant's face was never turned directly toward the camera, Barron knew it was appellant "without a doubt" as soon as he saw him in the video. Barron was 100 percent sure it was M.P.

Officers David Colclough and Patrick Griffin also viewed the video. Colclough had known appellant for two to three years. He had seen appellant over 100 times, hanging out at the housing developments he patrolled. Colclough recognized all three individuals on the video—Rushing, Farley, and appellant. Colclough had seen appellant with Rushing and Farley on prior occasions. He had no doubt that appellant was one of the individuals in the video.

Officer Griffin had similarly known appellant for "a number of years." He was not told before he viewed the video who might appear in the video. He recognized all three individuals; appellant he recognized immediately.

3

The juvenile court concluded that appellant had committed first degree burglaries of the portions of 351 Faxon occupied by Wang and Liao.[3]

## II. DISCUSSION

### A. *Sufficiency of the Evidence*

Appellant contends there was insufficient proof he entered 351 Faxon, or that if he entered the residence, he entered with the requisite felonious intent.

Our review for sufficiency of the evidence is governed here by the same principles as would be applied in an adult criminal appeal. (*In re Roderick P.* (1972) 7 Cal.3d 801, 809.) "In reviewing a challenge to the sufficiency of evidence, the reviewing court must determine from the entire record whether a reasonable trier of fact could have found that the prosecution sustained its burden of proof beyond a reasonable doubt. In making this determination, the reviewing court must consider the evidence in a light most favorable to the judgment and presume the existence of every fact the trier could reasonably deduce from the evidence in support of the judgment. The test is whether substantial evidence supports the decision, not whether the evidence proves guilt beyond a reasonable doubt." (*People v. Mincey* (1992) 2 Cal.4th 408, 432, citations and fn. omitted.)

The elements of the crime of burglary are (1) entry into a structure, (2) with the specific intent to commit a theft or any felony. (§ 459; CALCRIM No. 1700; *People v. Anderson* (2009) 47 Cal.4th 92, 101.) The crime is committed in the first degree if the structure is inhabited. (§ 460, subd. (a); CALCRIM No. 1701.)

It is undisputed that on November 9, 2012, someone entered 351 Faxon, including the separate living quarters occupied by Wang (see *People v. Wilson* (1989) 208 Cal.App.3d 611, 616 [rented room equipped with lock and key was a separate

---

[3] The crimes were committed in San Francisco and the jurisdictional proceedings took place in San Francisco County Superior Court. M.P., however, had already been adjudged a ward of the court in Alameda County based on prior offenses. After making the jurisdictional findings, the San Francisco court transferred the matter to Alameda County Superior Court for disposition. That court continued M.P. as a ward of the court, and committed his care, custody, and control to the probation department for out-of-home placement, with a maximum aggregated term of confinement of nine years and four months.

4

residence]), and stole property belonging to Wang and Liao. In turn, appellant does not dispute that he was one of the individuals in the surveillance video. The video shows appellant, Farley, and Rushing arrive on the morning the burglaries. They move about the sidewalk at the front of 351 Faxon. They walk off-screen toward the buildings and into what appears to be the entryways to 351 Faxon. They emerge carrying several objects, at least some of which appear to correspond to items stolen from Liao and Wang (e.g., black suitcase, backpack).[4] Appellant personally carried out one item. Given these facts, it is a very short logical leap to the conclusion that the burglaries were committed by appellant, Farley, and Rushing.

We disagree with appellant that this evidence was insufficient to infer that he entered 351 Faxon. Appellant suggests several alternative scenarios based on the layout of the entryways to 351 Faxon and the neighboring residence. For example, appellant states it is possible that he merely climbed the stairs to the second story entry, or that he might have entered the garage on the first level (where nothing was stolen). The trier of fact, however, could reject each of these alternate scenarios because the evidence offered no reasonable explanation, but for burglary, why appellant was present at 351 Faxon, why he was lingering there, and why he and his companions were carrying property from the front of the building to their car.

Similarly, as the People point out, the specific intent element of a burglary can be inferred from all the facts and circumstances disclosed by the evidence. (*People v. Holt* (1997) 15 Cal.4th 619, 669.) "Evidence of theft of property following entry may create a reasonable inference that the intent to steal existed at the moment of entry." (*In re Matthew A.* (2008) 165 Cal.App.4th 537, 541.) An appellate court cannot overturn a verdict when the evidence justifies a reasonable inference of felonious intent. (*People v. Matson* (1974) 13 Cal.3d 35, 41; accord *People v. Cain* (1995) 10 Cal.4th 1, 47.)

---

[4] The first item carried out by Farley appears to be a soft rifle case. Liao, however, did not describe what kind of gun was stolen from his residence. Nor was Liao asked to view the video when he testified at the jurisdictional hearing. Wang viewed only one brief part of the video. That part showed Farley carrying a white case, which Wang stated did not belong to her.

The reasonable inference from all the facts and circumstances is that appellant, Farley, and Rushing went to 351 Faxon to steal the property of the persons residing at that address.  Even if appellant did not personally enter 351 Faxon, which we think unlikely, the trier of fact could find appellant aided and abetted Farley and Rushing.  We are not persuaded otherwise by appellant's pointing to gaps in the evidence (the video showed only a 15 to 20-minute period and none of the stolen property was definitely linked to appellant).  All of the evidence points to appellant and his companions as the perpetrators, while nothing suggests someone else committed the burglaries and that appellant just happened, by unfortunate coincidence, to be loitering around 351 Faxon that morning.

*B. Error in Disposition Order*

Appellant notes the juvenile court's disposition order mistakenly states that appellant *admitted* one burglary count and that the other count was true *as amended*. Both counts were found true as charged.  The Attorney General agrees the matter should be remanded to the juvenile court to correct the disposition order to reflect the true findings.  We will direct the juvenile court to correct those errors.

III. DISPOSITION

The case is remanded to the juvenile court to correct the disposition order to reflect that counts 1 and 2 were found true on January 10, 2013.  In all other respects the disposition order is affirmed.

_____
REARDON, J.

We concur:

_____
RUVOLO, P. J.

_____
HUMES, J.