Filed 10/5/15  P. v. Marcus CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>SCOTT MICHAEL MARCUS,<br><br>     Defendant and Appellant. | D066389<br><br><br>(Super. Ct. No. SCN309086) |

APPEAL from a judgment of the Superior Court of San Diego County, Robert J. Kearney, Judge.  Affirmed.

Sheila L. O'Connor, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina, Annie Featherman Fraser and Michael Pulos, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Scott Michael Marcus guilty of abuse of an elder victim likely to cause great bodily injury or death (Pen. Code, § 368, subd. (b)(1))[1] with the further finding that the victim was 70 years of age or older and suffered great bodily injury (§§ 368, subd. (b)(2)(B), 12022.7, subd. (c)). The trial court sentenced Marcus to prison for a seven-year term.

Marcus contends (1) that the trial court erred in how it responded to a jury question during deliberations about the meaning of an instruction on unconsciousness, and (2) the trial court incorrectly believed that it lacked discretion to strike the five-year sentencing enhancement applicable to a defendant whose elder abuse victim was at least 70 years of age and suffered great bodily injury (§§ 368, subd. (b)(2)(B), 12022.7, subd. (a)). We conclude that Marcus's contentions are without merit, and we accordingly affirm the judgment.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In August 2012, Marcus was a tenant at an apartment complex where 78-year old Sam Warren was a property manager. Marcus recently had been notified that his lease was not being renewed and he was being evicted.

One morning, Warren was making his rounds in the apartment complex, using a trash picker tool. According to Warren's testimony, Marcus came toward him quickly, saying repeatedly "I'm going to get you," "I'm going to finish you off," "Kill, kill, kill."

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

2

Warren backed away, but Marcus followed and caught up to Warren. When Warren told Marcus to get away and pointed the trash picker tool at him, Marcus grabbed the tool and swung it at Warren, hitting Warren and breaking the tool.

Marcus then stated, "I want to get you" and punched Warren in the chest with his fist. Marcus took a second swing that hit Warren in the neck, and a third powerful swing that hit Warren in the jaw. Warren fell to the ground, with Marcus standing over him saying, "Now, I'm going to finish you off," "Kill, kill, kill," and preparing to punch Warren again. At that point, another man who resided in the apartment complex arrived on the scene and tackled Marcus, separating him from Warren. Marcus started hitting at the man who tackled him and as other residents arrived on the scene, Marcus was yelling and hitting at them too, and making threats.

Paramedics and police arrived as a result of 911 calls from residents of the apartment complex and brought Marcus under control. Warren was examined at a hospital and found to have suffered a head injury causing a subdural hematoma, i.e., bleeding between his skull and brain. Warren spent three days in the critical care unit in the hospital and then received worker's compensation disability coverage for approximately a year following the assault. Warren still suffers from impaired cognitive function, headaches and dizziness as a result of his head injury, from which he is not likely to ever fully recover.

Marcus was charged with abuse of an elder victim likely to cause great bodily injury or death (§ 368, subd. (b)(1)), with the further allegation that the victim was 70 years of age or older and suffered great bodily injury (§§ 368, subd. (b)(2)(B), 12022.7,

3

subd. (c)).  Marcus was also charged with making criminal threats to Warren and to one other resident of the apartment complex during the incident.  (§ 422.)

At trial, Marcus testified in his own defense.  According to Marcus, at the beginning of the incident he approached Warren, made a comment about his lease not being renewed and started to walk away.  Then, according Marcus, as he was walking away, he was hit very hard in the arm and the back of the head.  Although Marcus was not sure who hit him, he believed Warren hit him with the trash picker tool.  Marcus explained that he did not have a clear memory of what happened after he was hit, and he remembered only isolated fragments, including a black car coming out of a driveway, seeing Warren fall to the ground, and then being in another location where another resident of the apartment complex was trying to corner him.  As Marcus testified, "I had no idea of what was going on.  I knew I had been hit.  But I mean, everything was foggy, and there were people screaming.  I don't have a clear recollection of really, you know, what was going on."  Marcus testified that "absolutely" there are blank spots in his memory, and he does not remember hitting Warren.  Supporting the idea that Marcus may have had some kind of head injury, a police officer testified that he took Marcus "to the holding facilities to use the restroom.  And in there [Marcus] started to complain that his head hurt, that he felt dizzy.  Then he fell on the floor."  Marcus was then taken to the hospital.  Marcus testified that although he was "cleared" at the hospital, he felt like he

4

had a concussion.[2] During closing argument, defense counsel focused extensively on the contention that Marcus was not aware of his actions during the assault because of the head injury he claimed to have suffered when hit at the beginning of the incident.

At the close of the People's case, the trial court granted a motion to dismiss the count charging Marcus with making a criminal threat to Warren, and the jury was instructed to decide the remaining two counts. The jury acquitted Marcus of making a criminal threat to the other resident of the apartment complex, but found him guilty of elder abuse of Warren (§ 368, subd. (b)(1)), with the further finding that the victim was 70 years of age or older and suffered great bodily injury (§§ 368, subd. (b)(2)(B), 12022.7, subd. (c)).

The trial court sentenced Marcus to prison for a seven-year term, consisting of the lower term of two years on the elder abuse conviction, with an additional five-year enhancement based on the jury's true finding that Warren was at least 70 years of age and suffered great bodily injury.

---

2    We note that, although there were three witness to the beginning of the incident, none of them saw Warren attack Marcus as he was walking away and none of them saw Marcus suffer a head injury.

## II.

## DISCUSSION

A. *Marcus's Appellate Challenge to the Trial Court's Response to a Jury Question Has Been Forfeited*

We first consider Marcus's argument that the trial court erred in the manner in which it responded to a jury note during deliberations asking for clarification regarding the instruction on unconsciousness.

The jury was instructed on unconsciousness pursuant to CALCRIM No. 3425. As relevant here, the instruction stated: "The defendant is not guilty . . . if he acted while unconscious. Someone is unconscious when he or she is not conscious of his or her actions. Someone may be unconscious even though able to move. [¶] Unconsciousness may be caused by a blackout, or a concussion. [¶] The People must prove beyond a reasonable doubt that the defendant was conscious when he acted." (*Ibid*.) As we have described, defense counsel relied on this instruction to argue at length during closing argument that Marcus was unconscious and unaware of his actions during the assault on Warren because Marcus suffered a concussion when he was hit in the head at the beginning of the incident, as Marcus described during his testimony.

During deliberations the jury sent the following note asking clarification on the unconsciousness instruction: "Please define what can be constituted as a legal black-out, with reference to juror code 3425 — Unconsciousness. [¶] Are we able to consider rage as a vehicle or excus[e] for blackout[?] Is this something we can legitimately consider since there is some confusion as to its precedence or use in the course of the trial[?]"

6

The trial court proposed to counsel that it reply to the juror by referring them back to the unconsciousness instruction while also directing their attention to the instruction stating that words and phrases not specifically defined are to be applied using their ordinary and everyday meanings.

Apparently referring to the portion of the jury note that inquired whether "rage" could be considered "as a vehicle or excus[e] for blackout," defense counsel commented, "Would it be simpler to say 'yes,' to consider that? I'm always for easy, Your Honor." After the prosecutor expressed her concurrence with the response proposed by the trial court, the trial court asked defense counsel if he had any changes to the court's proposed response. Defense counsel replied, "No. Other than I think the answer, 'yes,' it should be there as to their question. If the Court doesn't feel that, the option number two, which is the Court's answer, then I don't have any problem with that. I strenuously argue we should say 'yes,' though." The trial court rejected defense counsel's suggestion that the answer include "yes" to the question about rage, explaining, "I don't think that rage as an emotion would necessarily be the foundation for unconsciousness. But rather than tell the jury that, I think it's appropriate to just let them know what's not specifically defined is using its ordinary everyday meanings, and then to reiterate what the definition is within the jury instructions. So I appreciate [the] simplicity of your response. But I'm not sure how accurate it would be."

The trial court then communicated the following response to the jury: "As referenced in instruction 200, words and phrases not specifically defined in the instructions are to be applied using their ordinary, everyday meanings. [¶] As to what

7

constitutes 'unconsciousness', the court refers you back to instruction 3425. As stated in instruction 3425, someone is legally unconscious when he or she is not conscious of his or her actions and someone may be unconscious even though able to move."

Marcus contends that the trial court erred in giving this response to the jury note. Specifically, Marcus makes a number of unfocused arguments as to how the trial court should have responded.

Marcus's first argument is that the trial court should have responded by giving the jury more information regarding the medical conditions of blackout and concussion. Specifically, pointing out that the jury was instructed that "unconsciousness may be caused by a blackout, or a concussion," Marcus argues that the court should not simply have "charged the jury to go back and use the ordinary, everyday meanings of these words" because "these words . . . are not ordinary everyday words -- they are medical terms of art and they require more elucidation than an admonishment to go back to the drawing board."

Second, Marcus relies on a definition of unconsciousness from *People v. Newton* (1970) 8 Cal.App.3d 359 and argues that the trial court "could have, for example," included language from *Newton* in its response to the jury. Specifically, the language that Marcus identifies from *Newton* states that " '[u]nconsciousness,' . . . need not reach the physical dimensions commonly associated with the term (coma, inertia, incapability of locomotion or manual action, and so on); it can exist . . . where the subject physically acts in fact but is not, at the time, conscious of acting." (*Id*. at p. 376.)

8

Finally, Marcus argues that the trial court could have responded with language from the 1979 version of CALJIC No. 4.30 on unconsciousness, which referred to " 'persons who are not conscious of acting but who perform acts while asleep or . . . because of . . . a blow on the head' " and informed the jury that " '[e]vidence has been received which may tend to show that the defendant was unconscious at the time and place of the commission of the alleged offense for which he is here on trial.' " (*People v. Babbitt* (1988) 45 Cal.3d 660, 690, fn. 8 [quoting 1979 version of CALJIC No. 4.30].)

Although Marcus makes these three suggestions about how the trial court could have responded to the jury question, he does *not* take the position that defense counsel did in the trial court, namely that the response should have included the answer "yes" to the jury's inquiry as to whether it could "consider rage as a vehicle or excus[e] for blackout."

The Attorney General contends that Marcus has forfeited his appellate challenge to the trial court's response to the jury question, and as we will explain, we agree.

A defendant forfeits an appellate challenge to the manner in which the trial court responds to a jury question if the defendant fails to request a different response or agrees with the response proposed by the trial court. (*People v. Davis* (2009) 46 Cal.4th 539, 616-617 [defendant forfeited his appellate challenge to trial court's response to the jury's inquiry regarding the meaning of the term " 'merely incidental' " in the jury instructions when defense counsel agreed to a response using the definition from Black's Law Dictionary and did not request any additional language (italics omitted)]; *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1193 [defendant waived his appellate challenge to trial

9

court's response to a jury question because defense counsel suggested and consented to the responses given by the trial court]; *People v. Cooper* (1991) 53 Cal.3d 771, 847 [when "defense counsel did not suggest the elaboration he now urges" concerning the trial court's response to a jury question, defendant "may not raise the issue on appeal"].)

Applying this principle here, Marcus has forfeited his challenge to the manner in which the trial court responded to the jury note because (1) he did not request any of the additional language that he now contends should have been added to the response, and (2) he affirmatively stated that he didn't "have any problem" with the response proposed by the trial court. Although defense counsel requested that the trial court modify its proposed response to the jury by adding the answer "yes" to the question about whether rage may be considered "as a vehicle or excus[e] for blackout," Marcus does not suggest on appeal that the trial court should have taken that approach. Instead, Marcus makes a series of suggestions about how the trial court could have elaborated on the definition of unconsciousness, none of which were raised by defense counsel at trial. The forfeiture doctrine accordingly bars Marcus's appellate challenge.

In his reply brief, Marcus argues for the first time that we should consider his appellate challenge to the trial court's response to the jury question on the ground that the trial court's response violated his substantial constitutional rights. (§ 1259 ["The appellate court may . . . review any instruction given, refused or modified, even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby."].) "Substantial rights are affected if the error 'result[s] in a miscarriage of justice, [i.e.,] making it reasonably probable defendant would have

10

obtained a more favorable result in the absence of error.' " (*People v. Elsey* (2000) 81 Cal.App.4th 948, 953, fn. 2.)  We reject the argument on three independent grounds.

As an initial matter, we note that the argument is raised for the first time in Marcus's reply brief.  Marcus's opening brief does not acknowledge that defense counsel failed to raise any of the issues to the trial court that Marcus now attempts to raise on appeal, and the opening brief accordingly does not argue that any exception to the forfeiture doctrine applies.  We may decline to consider an argument because it was raised for the first time in a reply brief (*People v. Zamudio* (2008) 43 Cal.4th 327, 353), and we accordingly reject Marcus's argument on that basis.

Second, even were we to consider Marcus's argument, it fails because he cites no authority suggesting that the type of error asserted here, concerning the trial court's failure to provide additional information in its otherwise *correct* response to the jury's question, affects his substantial constitutional rights.  On the contrary, Marcus's argument falls under the rule that " ' "[g]enerally, a party may not complain on appeal that an instruction *correct in law* and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language." ' " (*People v. Catlin* (2001) 26 Cal.4th 81, 149, italics added (*Catlin*).)  This principle applies here because the substance of Marcus's argument is *not* that the trial court's response to the jury was an *incorrect* statement of the law, but rather that the response should have been *expanded and amplified*.

Finally, because defense counsel expressly agreed to the trial court's proposed response to the jury, stating that he didn't "have any problem with that," defense counsel

invited the error, and Marcus accordingly cannot argue on appeal that the response was improper. (*Catlin*, *supra*, 26 Cal.4th at p. 150 ["When defense counsel makes a ' "conscious, deliberate tactical choice" ' to request an instruction, any error in the giving of the instruction is invited and cannot be raised on appeal."].) Invited error is another basis for concluding that a defendant may not raise a challenge to a jury instruction issue on appeal, even when substantial rights are implicated. (*People v. Weaver* (2001) 26 Cal.4th 876, 970.)

For all of these reasons, we conclude that Marcus has forfeited his appellate challenge to the trial court's response to the jury question on the unconsciousness instruction.

B.      *Marcus Has Not Established That the Trial Court Erred in Deciding Not to Strike the Allegation on the Enhancement Based on the Age of the Victim and the Infliction of Great Bodily Injury*

Based on the jury's true finding that the victim of elder abuse was at least 70 years of age and suffered great bodily injury, Marcus was subject to a sentencing enhancement of an additional five years. (§§ 368, subd. (b)(2)(B), 12022.7, subd. (c).) At sentencing, without a request from defense counsel, the trial court sua sponte considered whether to strike the allegations giving rise to the enhancement. Specifically, the trial court stated, "Then there is the allegation under . . . section 368, [subdivision ](b)(2), which the court has considered under [section ]1385 whether or not the court should strike that. And I've given a great deal of thought to that as well. And ultimately, the only reason that I could see for striking would be that it's a harsh sentence, and it would be that the court would disagree with what the Legislature did, which I don't think is a legal reason to strike that

12

punishment. More so, Mr. Warren is continuing to suffer from the effects and will likely continue to suffer the effects of this attack for the rest of his life. And therefore, I don't think it's appropriate to strike it. I don't think the court has an appropriate basis to do it, and I choose not to do that."

Section 1385, subdivision (a) provides that a trial court "may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed," and the authority to dismiss an action under the provision "includes the authority to strike factual allegations relevant to sentencing." (*People v. Fuentes* (2014) 225 Cal.App.4th 1283, 1989; see *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 530.) Thus, in referencing its decision "under [section ]1385 whether or not the court should strike" the allegation for the five-year enhancement, the trial court was referring to its authority to strike a factual allegation under section 1385 in the furtherance of justice.[3]

Marcus contends that the trial court erred in deciding not to strike the enhancement allegation because it based that decision on a misunderstanding of the law. Specifically, as Marcus reads the trial court's comments, the trial court concluded that it lacked the discretion to strike the enhancement allegation.

We reject Marcus's argument because it is not supported by the record. The trial court's statement does *not* reflect a belief that it lacked the discretion to strike the

---

[3]     In a footnote to the respondent's brief, the Attorney General takes the position that "it appears to be an unresolved question whether a trial court has the discretion to strike the age enhancement." We need not and do not reach that issue to resolve this appeal.

enhancement allegation. On the contrary, it is clear from the trial court's comments that it believed it *did* have discretion to strike the enhancement allegation pursuant to section 1385, but it examined the particular facts of this case and determined that justice would not be served by doing so here. Specifically, indicating that it believed section 1385 was applicable, the trial court sua sponte raised the possibility of striking the allegations, framing the decision as "whether or not the court *should* strike that." (Italics added.) Then, focusing on the severity of Warren's injuries, the trial court decided *not* to exercise its discretion, stating, "I don't think it's appropriate to strike it. I don't think the court has an appropriate basis to do it, and I choose not to do that."

Marcus argues that the trial court demonstrated that it believed it lacked discretion to strike the enhancement allegation by making the comment that "ultimately, the only reason that I could see for striking would be that it's a harsh sentence, and it would be that the court would disagree with what the Legislature did, which I don't think is a legal reason to strike that punishment." We reject Marcus's argument, as the trial court's statement does not show that the trial court believed it lacked discretion to strike the enhancement allegation. As we read the comment, the trial court was indicating that it believed five years was a significant addition to Marcus's sentence for the elder abuse conviction and thus was a "harsh" sentence, but it recognized that it was the role of the Legislature, not of the court, to decide the specific length of a particular sentence enhancement. In making that comment, the trial court showed it understood that the proper question before it was not the length of the enhancement and whether it was "harsh," but instead whether, *under the particular facts of this case*, justice would be

14

served by striking the enhancement allegation.  The trial court then properly turned to that issue, examining the nature of Marcus's criminal conduct and noting the significant injuries incurred by Warren.  On that basis, the trial court determined that the interests of justice did *not* warrant an exercise of its discretion to strike the enhancement allegations.

As we find no basis in the record for Marcus's contention that the trial court believed it lacked the discretion to strike the enhancement allegation, we reject Marcus's challenge to the trial court's decision on that issue.

## DISPOSITION

The judgment is affirmed.


IRION, J.

WE CONCUR:


HALLER, Acting P. J.


McINTYRE, J.