[No. C004253. Third Dist. Oct. 18, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
LONNIEL MACKABEE, JR., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I, III and V of the Discussion.

**COUNSEL**

Harvey R. Zall, State Public Defender, under appointment by the Court of Appeal, and Thomas L. Carroll, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye and W. Scott Thorpe, Assistant Attorneys General, Jane N. Kirkland and Wanda Hill Rouzan, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SIMS, J.**—Defendant was convicted of four separate crimes committed over a three-month period: first degree residential burglary committed on July 4, 1987; second degree robbery committed on July 13, 1987; first degree residential burglary committed on September 16, 1987; and second degree burglary committed on October 3, 1987. Because the last three felonies were committed while defendant was released from custody on earlier offenses, the trial court imposed various enhancements under Penal Code section 12022.1. (Further undesignated statutory references are to the Penal Code.)

On appeal, defendant contends (1) the trial court erred in failing to bifurcate trial of the enhancement allegations; (2) entry into an office area within a public structure will not support a burglary conviction; (3) the trial court erred in failing to instruct the jury it must unanimously agree which of two acts supports their verdict on the final burglary; (4) various section 12022.1 enhancements were improperly imposed; and (5) the trial court committed other sentencing errors.

In this published portion of our opinion, we conclude an office space in the lobby of a public building, separated from the lobby by a waist-high counter, is a "room" for purposes of the burglary statute, section 459. We also conclude the trial court erroneously imposed four of six section 12022.1 enhancements. In an unpublished portion of our opinion, we reject defendant's remaining contentions. We shall therefore strike the unlawful enhancements but otherwise affirm the judgment.

Pertinent facts are set forth in our discussion.

## DISCUSSION

I. *Any Error in Failing to Bifurcate Trial of the Enhancement Allegations Was Harmless.* *

. . . . . . . . . . . . . . . . . . . . .

II. *The Burglary of the Office Area in the CARD Center.*

Defendant contends he was unlawfully convicted of the second degree burglary committed on October 3, 1987. The facts are as follows: The Chico Area Recreation District (CARD) Center is a public building sometimes used for private functions. The building's main lobby contains an office area separated from the lobby by a waist-high counter about two and one-half feet wide. The counter runs from a side wall, makes an "L" turn and runs to a back wall. Employees gain access to the office area through a swinging gate located at the end of the counter next to the wall. The front part of the counter is about eight feet from the back wall. Two desks are within this enclosed area.

On October 3, 1987, defendant attended a wedding reception at the CARD Center. Defendant's cousin, who also attended, testified she and defendant were both in the lobby. She saw defendant go outside. Then he reentered the building, jumped over the counter, and left the building with an attache case. A few minutes later, the cousin saw defendant come back into the lobby, go through the gate, behind the counter, then leave with a typewriter.

Defendant denied taking the attache case. He admitted taking the typewriter but claimed he just wanted an object to throw at a man with whom he got into a fight outside the building.

■ In his opening brief, defendant contends the prosecutor tried the case as an entry into the office area, and entry into the office area will not support a burglary charge, because that area is not a structure or room within the definition of section 459. In their responsive brief, the People disagree, and alternatively contend the case was tried as an entry into both the building and the office area. By way of reply, defendant argues that if entry into the building is relied upon, then the trial court improperly instructed the jury that the crime was committed if defendant had the intent to steal when he entered the office area rather than when he entered the

---

*See footnote, *ante,* page 1250.

building itself. We conclude the case was tried to the jury on the theory defendant burglarized the office area and defendant was convicted of that offense.

The jury necessarily got its idea of the place that was burglarized from the jury instructions and the prosecutor's closing argument. (See *People* v. *Carrera* (1989) 49 Cal.3d 291, 313-314 [261 Cal.Rptr. 348, 777 P.2d 121] [despite jury instruction's reference to flight immediately after commission of crime, prosecutor's argument made clear to jury that only defendant's later escape from jail was implicated by flight instruction].)

As pertinent, the jury was instructed: "In order to prove the commission of the crime of burglary, each of the following elements must be proved: 1. that a person entered a *closed area within a public structure, . . .*" (Italics added.) This instruction clearly framed the issue as whether defendant entered the office area within the CARD building.

So did the prosecutor's closing argument, which reads in relevant part: "Entry into a structure, with intent to steal, and again permanently deprive, somebody of their property. Now this is a rather interesting case because technically the structure is open to the public. Or some events I imagine it's only open to invitation, technically to the public. [¶] But we submit the employee area is setoff much as the Court's bench and court clerk's area is, and it's not open to the public. And we have an eye witness, his cousin, who was in ters [*sic*] here, not wanting to testify against him, who saw him come in, jump the counter, cross back to the desk, and take a blue attache case, and go out. [¶] And a few minutes later, she is sitting there and he comes back, and in time he goes trough [*sic*] the gate and he crosses back into the closed area again, and he makes off with a typewriter. [¶] And he goes back out with it. It's an enclosed area, not open to the public inside a structure."

We have no doubt the jury understood that defendant's conviction for burglary on this count depended on whether he entered the office area with the prescribed intent.

■ Our conclusion is not undermined by the fact that the verdict form and the information refer to entry of the CARD building.

The trial court used a verdict form which required the jury to report all its verdicts and findings on the same form.[1] Before the verdict form was submitted to the jury, the trial court suggested that each burglary count be somehow identified so as to differentiate it from the other burglary counts,

---

[1] The form is four pages long.

in order to avoid confusing the jury. With the agreement of both counsel, handwritten notations were placed above each burglary count on the verdict form identifying the burglary counts respectively as "Liptrap Residence," "Green Residence," and "C.A.R.D. building." The court then told the jury the purpose of the handwritten notations was to tell them what each count referred to. In these circumstances, we do not think the jury's verdict may be reasonably construed as reflecting an intent to convict defendant of entering the CARD building rather than the "closed area within a public structure" identified in the instructions. Rather, we think the jury understood the handwritten notations as indicating merely a convenient way of identifying the various burglary counts.

The form of a verdict is immaterial provided the intention to convict of the crime charged is unmistakably expressed. (*People v. Tilley* (1901) 135 Cal. 61, 62 [67 P. 42].) Where, as here, a jury's verdict is ambiguous, "A verdict is to be given a reasonable intendment and be construed in light of the issues submitted to the jury and the instructions of the court." (*People v. Radil* (1977) 76 Cal.App.3d 702, 710 [142 Cal.Rptr. 233], accord *People v. Allen* (1985) 165 Cal.App.3d 616, 628 [211 Cal.Rptr. 837].) Here, as we have noted, the court's instructions and the prosecutor's closing argument framed the pertinent issue as whether defendant burglarized the interior office area of the CARD building.

We acknowledge that a verdict should be construed in connection with the information (*People v. Tilley, supra,* 135 Cal. at p. 62) and that here the information alleged defendant "did enter the Chico Area Recreation Center with intent to commit theft, a felony." However, we conclude this reference in the information does not control the meaning of the jury's verdict to the exclusion of the jury instructions and the prosecutor's closing argument.

In this regard we note that there is no convenient name for the "closed area" inside the CARD Center. We believe a lay jury would naturally think that a burglary of an interior space in the CARD Center would be a burglary of the center itself.[2] Moreover, although the jury instructions were

---

[2] We also note defendant has appropriately made no claim of any variance between the pleading of the information and the proof at trial—a claim that would be doomed to fail. (See *People v. Williams* (1945) 27 Cal.2d 220, 225-226 [163 P.2d 692] [dictum: variance between pleading and proof of exact address immaterial]; *People v. Atwood* (1963) 223 Cal.App.2d 316, 324 [35 Cal.Rptr. 831] [charge of entering "premises" at specified location gave sufficient notice of offense, even though "premises" encompasses more than the structures listed in § 459]; *People v. Carkeek* (1939) 35 Cal.App.2d 499, 501-502 [96 P.2d 132] [charging entry of "office" sufficient, rejecting the defendant's argument that "some politicians enter [political] office with intent to commit theft therein, which entry could certainly not be called burglary"]; cf. *People v. Nunez* (1970) 7 Cal.App.3d 655, 663 [86 Cal.Rptr. 707] [more specificity desirable to establish first degree burglary].)

sent into the jury room during deliberations, the information was not. It is therefore reasonable to assume the jury paid more attention to the instructions than to the information.

We therefore conclude that, in ascertaining the meaning of the jury's verdict in the present circumstances, the jury instructions and prosecutor's closing argument are entitled to greater weight than the allegations of the information. Those instructions and that argument show defendant was convicted of burglarizing the interior office area of the CARD building.

■ The question then becomes whether the office area is a "room" within the meaning of section 459. We conclude it is.

As pertinent, section 459 prohibits entry into "any . . . room . . ." with intent to commit theft or any felony.

We first note that the office space at issue falls within the common definition of a room, to wit, "a part of the inside of a building, shelter or dwelling usually set off by a partition." (Webster's New Internat. Dict. (3d ed. 1981) p. 1972.) Our Supreme Court long ago held that, for purposes of determining whether a "room" had been burglarized, the partitions forming a room need not extend to the ceiling. (*People* v. *Young* (1884) 65 Cal. 225, 226 [3 P. 813] [railroad ticket office constructed of partitions rising eight or nine feet from floor]; see *Anderson* v. *The State* (Tex.Ct.App. 1884) 17 Tex.App. 305, 311 [office area framed by four-foot-high pickets held "room" and "structure" capable of being burglarized]; see generally Annot., What Is a "Building" or "House" Within Burglary Statutes (1961) 78 A.L.R.2d 778.)

Next, we note that the policies underlying the burglary statute compel the conclusion the office space is a "room." In *People* v. *Nible* (1988) 200 Cal.App.3d 838 [246 Cal.Rptr. 119] we recently said: "As the burglary statute is designed to protect against unauthorized entry and its attendant dangers, the ultimate test of whether a burglarious entry has occurred must focus on the protection the owners or inhabitants of a structure reasonably expect. The proper question is whether the nature of a structure's composition is such that a reasonable person would expect some protection from unauthorized intrusions. . . . [E]ven an open door or window affords some expectation of protection from unauthorized intrusion because reasonable persons understand the social convention that portals may not be crossed without permission from the structure's owner." (*Id.* at p. 844 [penetration of window screen constitutes entry under section 459].)

In today's world, counters are frequently used to designate the boundary between public and private spaces. Common examples are shops and

services found in malls, hotels, and airports. Employees who work behind counters have a reasonable expectation that the public will not enter there, and members of the public know they may not go behind counters without permission. Here, the waist-high counter with gate reasonably communicated to all that nonemployees could not enter the office area without authorization. We therefore conclude the area enclosed by the counter was a "room" within the meaning of section 459.

In opposition to this conclusion, defendant cites *People v. Brooks* (1982) 133 Cal.App.3d 200 [183 Cal.Rptr. 773], where the court concluded a store's loading dock, which was surrounded by a chainlink fence and was covered by a roof, was a "building" within the meaning of section 459. In reaching this conclusion *Brooks* opined, "[T]he test should not be so much whether the walls touch the ceiling or roof but whether the walls act as a significant barrier to entrance without cutting or breaking." (*Id.* at p. 206.) We have noted that *Brooks*'s common law "cutting or breaking test recognizes the reasonable expectation of a property owner or inhabitant that if one defines one's living or storage space utilizing tangible materials, one reasonably expects intruders will not penetrate that space without authorization." (*People v. Nible, supra,* 200 Cal.App.3d at p. 845, fn. 4.) However, *Brooks* does not suggest that cutting or breaking is required for commission of a burglary, because California's statutory definition of burglary is broader than the common law definition, and a breaking is no longer required. (*People v. Gauze* (1975) 15 Cal.3d 709, 712-713 [125 Cal.Rptr. 773, 542 P.2d 1365].)

Defendant was lawfully convicted of burglarizing the office area in the CARD Center.

III. *The Omission of a Jury Instruction on Unanimous Verdict Was Harmless Error.* *

. . . . . . . . . . . . . . . . . . . .

IV. *The Trial Court Could Impose Only Two Enhancements Under Section 12022.1.*

Defendant contends only two enhancements could be imposed under section 12022.1.³

---

* See footnote, *ante,* page 1250.
³ Section 12022.1 provides:
"(a) For the purposes of this section only: "(1) 'Primary offense' means a felony offense for which a person has been released from custody on bail or on his or her own recognizance pri-

In sentencing defendant to state prison, the court imposed six section 12022.1 enhancements at two years each, for a total of twelve years, as follows: Because defendant was released from custody on the first felony when he committed the second felony, the court imposed one enhancement.

Because defendant was released from custody on the first and second felonies when he committed the third felony, the court imposed two additional enhancements.

Because the trial court apparently believed defendant was released from custody on the first, second and third felonies when he committed the fourth felony, the court imposed three more enhancements.

A. *One Section 12022.1 Enhancement Must Be Stricken Because Defendant Was Not Released Pending Trial for the Third Felony at the Time the Fourth Felony Was Committed.*

■■■ Defendant challenges the section 12022.1 enhancement imposed for commission of the fourth felony while released from custody on the third felony, because he had not yet been arrested (and therefore obviously

---

or to the judgment becoming final, including the disposition of any appeal, or for which release on bail or his or her recognizance has been revoked.

(2) 'Secondary defense' means a felony offense alleged to have been committed while the person is released from custody for a primary offense.

"(b) Any person arrested for a secondary offense which was alleged to have been committed while that person was released from custody on a primary offense shall be subject to a penalty enhancement of an additional two years in state prison which shall be served consecutive to any other term imposed by the court.

"(c) The enhancement allegation provided in subdivision (b) shall be pleaded in the information or indictment which alleges the secondary offense and shall be proved as provided by law. The enhancement allegation may be pleaded in a complaint but need not be proved at the preliminary hearing for the secondary offense.

"(d) Whenever there is a conviction for the secondary offense and the enhancement is proved, and the person is sentenced on the secondary offense prior to the conviction of the primary offense, the imposition of the enhancement shall be stayed pending imposition of the sentence for the primary offense. The stay shall be lifted by the court hearing the primary offense at the time of sentencing for that offense and shall be recorded in the abstract of judgment. If the person is acquitted of the primary offense the stay shall be permanent.

"(e) If the person is convicted of a felony for the primary offense, is sentenced to state prison for the primary offense, and is convicted of a felony for the secondary offense, any state prison sentence for the secondary offense shall be consecutive to the primary sentence.

"(f) If the person is convicted of a felony for the primary offense, is granted probation for the primary offense, and is convicted of a felony for the secondary offense, any state prison sentence for the secondary offense shall be enhanced as provided in subdivision (b).

"(g) If the primary offense conviction is reversed on appeal, the enhancement shall be suspended pending retrial of that felony. Upon retrial and reconviction, the enhancement shall be reimposed. If the person is no longer in custody for the secondary offense upon reconviction of the primary offense, the court may, at its discretion, reimpose the enhancement and order him or her recommitted to custody."

had not been released) for the third felony at the time the fourth felony was committed. The record shows this contention is meritorious. Defendant was not arrested for the third felony until after his arrest for the fourth felony. The People agree.

B. *Imposition of More Than Two Section 12022.1 Enhancements Was Improper.*

Defendant contends of the five remaining enhancements, the trial court should have imposed at most two: one for his release from custody on the first felony, and one for his release from custody on the second felony. We must agree.

If section 12022.1 is read in isolation, its language arguably supports the result reached by the trial court. Subdivision (b) of the statute describes when the enhancement shall be imposed: "Any person arrested for a secondary offense which was alleged to have been committed while that person was released from custody on a primary offense shall be subject to a penalty enhancement of an additional two years in state prison which shall be served consecutive to any other term imposed by the court."

Although not crystal clear, this language appears to suggest that a defendant's sentence shall be enhanced by two years for *each* secondary offense committed while defendant was released from custody on *each* primary offense, provided the other statutory conditions are satisfied. (See fn. 3, *ante*.) This reading is reenforced by use of "*a* secondary offense" and "*a* primary offense" in subdivision (b), because the article "a" is generally used in statutes to connote the singular, or, here, *each* offense. (See *People* v. *Kirk* (1989) 211 Cal.App.3d 58, 64 [259 Cal.Rptr. 44].) By this reading (and putting aside the possible application of section 654), a defendant convicted and sentenced to state prison for several secondary offenses would have his sentence for *each* secondary offense enhanced by two years for *each* primary offense, just as the trial court did here.

In *People* v. *Warinner* (1988) 200 Cal.App.3d 1352 [247 Cal.Rptr. 197], the Second District read the statute in this manner with respect to primary offenses. *Warinner* affirmed imposition of two section 12022.1 enhancements, one for each of two primary offenses, where the defendant committed a third felony while released on the first two felonies. *Warinner* reasoned: "Although the Legislature did not expressly prescribe the application of section 12022.1 for 'each' primary offense for which a defendant is on bail, a fair reading of the statute compels that result. Subdivision (b) of the section mandates a two-year enhancement where a defendant is released from custody 'on a primary offense.' Since the legislative meaning is

obvious, it matters not that the Legislature did not use the words 'each primary offense.' [¶] The legislative intent of section 12022.1 was to punish recidivists with additional penalties. The increased penalties here are due to Warinner's status *as a repeat offender* and arise as an incident of the subsequent offense. [Citations]." (*Id*. at p. 1355-1356, italics in original.)

We agree with *Warinner. Warinner* would allow two enhancements in this case—one for each of the two primary offenses. However, this case tenders an additional question not present in *Warinner*: whether each primary offense subjects defendant to an enhancement for *each* secondary offense.

The answer to this question is complicated by the determinate sentencing provisions of section 1170.1.[4] ■ We must consider section 1170.1 because, "Statutes must be construed with reference to the system of laws of which they are a part. [Citation.]" (*People* v. *Hernandez* (1988) 46 Cal.3d 194, 201 [249 Cal.Rptr. 850, 757 P.2d 1013].) ■ Moreover, in construing penal statutes, we must give a criminal defendant the benefit of any realistic doubt. (*People* v. *Anderson* (1987) 43 Cal.3d 1104, 1145 [240 Cal.Rptr. 585, 742 P.2d 1306].)

In *People* v. *Tassell* (1984) 36 Cal.3d 77 [201 Cal.Rptr. 567, 679 P.2d 1] our Supreme Court construed section 1170.1 as follows: "Section 1170.1 refers to two kinds of enhancements: (1) those which go to the nature of the offender; and (2) those which go to the nature of the offense. Enhancements for prior convictions—authorized by sections 667.5, 667.6 *and 12022.1*—

---

[4]Section 1170.1, subdivision (a), provides in part: "Except as provided in subdivision (c) and subject to Section 654, when any person is convicted of two or more felonies, whether in the same proceeding or court or in different proceedings or courts, . . . and a consecutive term of imprisonment is imposed under Sections 669 and 1170, the *aggregate term of imprisonment for all these convictions shall be the sum of the principal term, the subordinate term and any additional term imposed pursuant to Section 667, 667.5, 667.6, or 12022.1,* . . . The principal term shall consist of the greatest term of imprisonment imposed by the court for any of the crimes, including any enhancements imposed pursuant to Section 667.8, 667.85, 12022, 12022.2, 12022.3, 12022.4, 12022.5, 12022.55, 12022.6, 12022.7, 12022.75, 12022.8, or 12022.9 and an enhancement imposed pursuant to Section 11370.4 or 11379.8 of the Health and Safety Code. The subordinate term for each consecutive offense which is not a 'violent felony' as defined in subdivision (c) of Section 667.5 shall consist of one-third of the middle term of imprisonment prescribed for each other such felony conviction for which a consecutive term of imprisonment is imposed, and shall exclude any enhancements. . . . The subordinate term for each consecutive offense which is a 'violent felony' as defined in subdivision (c) of Section 667.5, including those offenses described in paragraph (8) or (9) of subdivision (c) of Section 667.5 shall consist of one-third of the middle term of imprisonment prescribed for each other such felony conviction for which a consecutive term of imprisonment is imposed, and shall include one-third of any enhancements imposed pursuant to Section 667.8, 667.85, 12022, 12022.2, 12022.4, 12022.5, 12022.55, 12022.7, 12022.75, or 12022.9." (Italics added.)

are of the first sort. The second kind of enhancements—those which arise from the circumstances of the crime—are typified by sections 12022.5 and 12022.7: was a firearm used or was great bodily injury inflicted? *Enhancements* of the second kind enhance the several counts; those *of the first kind, by contrast, have nothing to do with particular counts but, since they are related to the offender, are added only as a step in arriving at the aggregate sentence.*" (*Id.* at p. 90, italics added.) In line with this reasoning, *Tassel* held that "enhancements for prior convictions do not attach to particular counts but are added just once as the final step in computing the total sentence." (*Ibid.*, fn. omitted.)

*Tassel*'s view of section 12022.1 is supported by the cognizable legislative history of the statute. ■ A staff report of the Senate Committee on Judiciary on Assembly Bill No. 692 (which enacted the statute)[5] describes the difference between enhancements concerned with the circumstances of an offense and those concerned with the status of an offender. The report describes the section 12022.1 enhancement as "another status enhancement." (Sen. Com. on Judiciary Rep. on Assem. Bill No. 692 (1981-1982 Reg. Sess.) p. 5.)

In *People* v. *Nguyen* (1988) 204 Cal.App.3d 181 [251 Cal.Rptr. 40], modified 204 Cal.App.3d 1475a, the Fourth District, following *Tassel*, concluded a single primary offense would not support two section 12022.1 enhancements—one for each of two secondary offenses. ■ We agree with *Nguyen*. We also agree with *Warinner* that, just as section 1170.1 does not bar multiple enhancements for separate prior prison terms (§ 667.5), it does not bar multiple enhancements based on separate releases on primary offenses.[6] (*Warinner, supra,* 200 Cal.App.3d at p. 1356.)

■ A sentence greater than allowed by law exceeds the trial court's statutory jurisdiction. (*In re Huffman* (1986) 42 Cal.3d 552, 555 [229 Cal.Rptr. 789, 724 P.2d 475].) We therefore strike four of the six enhancements imposed by the trial court.[7] The trial court shall prepare an amended abstract of judgment showing imposition of two enhancements *as status enhancements* and further showing a total unstayed term of eleven years in prison.

---

[5] The staff report is cognizable legislative history. (See *Hutnick* v. *United States Fidelity & Guaranty Co.* (1988) 47 Cal.3d 456, 465, fn. 7 [253 Cal.Rptr. 236, 763 P.2d 1326].)

[6] We have no occasion in this case to determine whether multiple enhancements can be imposed where a defendant is simultaneously released on two primary offenses. Here, defendant's releases on two primary offenses were at different times.

[7] Defendant contends one enhancement added to the third felony must be stricken due to a clerical error. Because we are striking four of the six enhancements, we need not address this issue.

## V. *Other Alleged Sentencing Errors.* *

. . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

Four of the six enhancements imposed pursuant to section 12022.1 are stricken. The trial court shall prepare an amended abstract of judgment as described in the opinion and shall forward a copy to the Department of Corrections. In all other respects the judgment is affirmed.

Puglia, P. J., and Scotland, J., concurred.

---

* See footnote, *ante,* page 1250.