Filed 1/22/24

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C096740 |
| Plaintiff and Respondent, | (Super. Ct. No. 21FE013829) |
| v. | |
| SARAH RACHEL HURT, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Patrick Marlette, Judge. Affirmed as modified.

Denise M. Rudasill, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen, and Sally Espinoza, Deputy Attorney General, for Plaintiff and Respondent.

Defendant Sarah Rachel Hurt committed various weapon and drug related offenses at three separate times. She committed two offenses while she was on bail for earlier offenses that had originally been charged as one case. She contends on appeal that the

---

[*] Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts I, II, and III of the Discussion.

trial court erred by (1) consolidating trial on all the offenses; (2) admitting evidence of uncharged acts, with these first two errors resulting in cumulative error; and (3) imposing two on-bail enhancements under Penal Code section 12022.1. Except to strike one of the enhancements, we affirm the judgment.

FACTS AND HISTORY OF THE PROCEEDINGS

1.     August 12, 2021 (Counts 1-3)

Sacramento County Sheriff's Deputies Vadem Ivanov and Shea Lukes answered a call from a home on Zephyr Hills Way late on August 12, 2021. The caller said defendant was there, and she was not supposed to be there. Upon arriving, the deputies found codefendant Michael Torrez inside a vehicle parked in the residence's driveway. Torrez appeared nervous and was looking around. Deputy Ivanov directed him to get out of the car, and he detained him.

Deputy Lukes contacted defendant inside the residence. Defendant said Torrez was her friend and had given her a ride to the house. Lukes then learned from Deputy Ivanov by radio that he had found a firearm inside the vehicle. Lukes escorted defendant outside and placed her in the back of the patrol vehicle.

Deputy Ivanov found a backpack on the car's passenger side floorboard. Inside the backpack, he found a loaded 9 mm handgun with a 17-round high-capacity magazine. The gun was a "ghost gun"; it had no identifying markings. Ivanov also found inside the backpack ammunition rounds that had been fashioned into a necklace, 84.08 grams of methamphetamine, and $1,400 in cash. The backpack also contained women's jewelry, women's deodorant, and feminine hygiene products.

Inside the car, the deputies found two digital scales and a notebook. They found in the car's trunk a clear glass pipe commonly used to smoke methamphetamine. It had a white substance inside. Defendant's cell phone contained a picture of a firearm sitting on a chair at an unknown location. Torrez's cell phone contained photos of assault rifles, a

2

handgun, and methamphetamine.  The photos were taken at a Motel 6 in West Sacramento.  Deputy Ivanov found a Motel 6 key in Torrez's pocket and $600 in cash.

In the back of the patrol car, defendant and Torrez engaged in the following conversation:

"Hurt:            You really put that shit in my backpack?

"Torrez:          Shut up, shut up.  Listen I didn't mean to.  Okay?

"Hurt:            No come on Bizzy.

"Torrez:          Listen to me.  Look at me.

"Hurt:            No fuck you bro.

[¶ . . . ¶]

"Torrez:          Look at me come here.  We're going to jail together either way not, so it's a wrap.

"Hurt:            Yeah and I didn't even do nothing.  The fuck I just came to get some sneakers.

"Torrez:          Mama what are you – you had dope on you.

"Hurt:            [Unintelligible] get some fucking sneakers.

"Torrez:          Did you have drugs in you?  On you?

"Hurt:            Yeah.

"Torrez:          Okay.  See?

[¶ . . . ¶]

"Torrez:          Just come here.  If you don't come here I'm going to start stomping you out right now.

"Hurt:            No bruh, I've never been done this dirty in my entire life.  Then try stomping me out in a cop car.

"Torrez:          The fuck are you talking about.

"Hurt:            Keep threatening me.  Keep threatening me.

"Torrez:          You need to stop your fucking lies man.  Stop with your bullshit.

3

"Hurt:      You just told me you were going to stomp me out.  You literally just said that.

"Torrez:    Are you fucking serious right now?

"Hurt:      Oh yeah yeah?  You're going to fucking try and kick me?

"Torrez:    Shut up.  Stop it.  Quit being a weirdo."

2.      Uncharged acts evidence

That same night, August 12, 2021, and into the early morning hours of August 13, law enforcement officers searched room 258 at a Motel 6 in West Sacramento.  The room was registered to defendant, Torrez, and one other person.  In the room, officers found a firearm and a magazine, and a black bag on the air conditioning unit that contained a white crystalline substance that appeared to be methamphetamine.  A toiletry bag in the bathroom contained two digital scales and weights for calibrating them.  Another toiletry bag contained a cell phone.  A small plastic cup on the sink counter contained a white crystalline substance that looked like methamphetamine.  A black backpack on the floor contained several Ziploc bags of various sizes, loose pills, two additional cell phones, and a notebook containing telephone numbers.  A black duffel bag on the bed contained women's clothing, beauty supplies, and mail addressed to an address on Zephyr Hills Way in Sacramento.  Inside a nightstand, officers found a black bag containing two round, blue pills and two bongs or pipes commonly used to smoke methamphetamine.  Officers also found inside the room another cell phone, a laptop, a computer, a tablet, and a wallet with Torrez's identification inside.

3.      September 15, 2021 (Count 4)

On September 15, 2021, Officer David Anderson conducted a home visit at defendant's residence on Zephyr Hills Way.  Defendant was in her room with a friend.  Searching the room, Officer Anderson found a backpack containing two bags of methamphetamine, a glass smoking pipe commonly used to smoke methamphetamine,

4

and a Department of Motor Vehicles identification card bearing defendant's name. The methamphetamine weighed 36.29 grams. Defendant's cellphone contained a picture of methamphetamine that appeared to be the same methamphetamine Officer Anderson found in the backpack.

4. December 8, 2021 (Count 5)

On December 8, 2021, Sacramento County Deputy Sheriffs Paul Hoffman and Spencer Wright went to a Red Roof Inn to contact Cameron Ray, a person of interest. Police had observed criminal activity happening at the hotel, including assaults, prostitution, and narcotics-related crimes. The door to room 121 opened, and Ray and defendant walked out of the room and went in separate directions.

Deputy Hoffman detained defendant and searched the backpack she was carrying. He found inside a black thermos that contained a plastic baggie holding 48.47 grams of methamphetamine. Defendant admitted the substance was methamphetamine. Hoffman found on defendant's person a cell phone, bank cards, and cash totaling $1,329. Deputy Wright also found a digital scale inside the backpack.

Car keys found on defendant's person operated a gray Hyundai that was parked in front of room 121. The car had a release of liability form in defendant's name. Inside the car, Deputy Wright found a plastic container that held small baggies.

5. Expert testimony

Daniel Garbutt, an investigator with the Sacramento County District Attorney's Office, testified as an expert witness on the sale and use of methamphetamine and the extraction of digital images from cell phones. The average dose of methamphetamine is between a tenth and a quarter of a gram. Drug dealers often carry firearms for protection. They use small digital scales to measure the quantity of drug they are selling. Sales usually transpire in cash, and a dealer's holding a large sum of money would indicate the dealer had prior sales or was trying to obtain more product.

5

Examining defendant's cell phone, Garbutt found messages and images indicative of drug sales. These included photos of drugs, a gun, and money.

When presented with hypotheticals mirroring the three charged incidents involving defendant, Garbutt opined that in each incident, the drugs were possessed for the purpose of sale.

### 6.     Verdict and sentence

A jury found defendant guilty of unlawful possession of methamphetamine while armed with a loaded firearm (count 3); being a felon in possession of a firearm (count 1); and three counts of possession of a controlled substance for sale (counts 2, 4, and 5). (Health & Saf. Code, § 11370.1, subd. (a); Pen. Code, § 29800, subd. (a)(1); Health & Saf. Code, § 11378 [statutory section citations that follow are found in the Penal Code unless otherwise stated].) The trial court found true two on-bail enhancements under section 12022.1 for the commission of counts 4 and 5 while released on bail prior to judgment on counts 1, 2, and 3.

The trial court sentenced defendant to an aggregate prison term of nine years, four months: the upper term of four years on count 3; eight months each (one-third the midterm) on counts 4 and 5; and two years each for the on-bail enhancements. The court imposed the upper term of three years each on counts 2 and 3, and it stayed execution of those terms under section 654.

DISCUSSION

I

*Motion to Consolidate*

Defendant was originally charged in three separate cases, one for each incident. The trial court granted the prosecution's motion to consolidate the matters. Defendant contends the trial court prejudicially erred in granting the prosecution's motion because

6

the offenses were not connected together in their commission and the evidence in the three matters was not cross-admissible in separate trials.

Accusatory pleadings may be consolidated for trial where they charge two or more different offenses that are connected together in their commission or are of the same class of offenses. (§ 954.) Whether offenses are properly joined under section 954 is a question of law subject to independent review on appeal. (*People v. Westerfield* (2019) 6 Cal.5th 632, 686.)

Offenses committed at different times and places against different victims are connected together in their commission when they are linked by a common element of substantial importance. (*Westerfield, supra*, 6 Cal.5th at p. 686.) Motive or intent may be such a common element. (*Ibid*.) A connected intent or motive "is sufficient in and of itself to establish the appropriateness of joinder." (*Id*. at pp. 687-688.)

Defendant had a common intent in the charged offenses. In each offense, she possessed methamphetamine with the intent to sell. The circumstantial evidence presented when the prosecution brought its motion largely mirrored the evidence presented at trial and overwhelmingly established that she intended to sell the drugs. Defendant does not contest these facts.

Defendant nonetheless argues the trial court erred in consolidating the matters for a number of reasons. She contends the cases were not connected in their commission because there was no evidence the gun found in her backpack during the August 2021 possession in Torrez's car was connected to or showed a causal connection with the other possession incidents. But consolidation does not require a showing of a causal nexus. That defendant possessed a firearm in only one of the incidents does not negate the fact that in each incident, she had the identical intent to sell the methamphetamine she knowingly possessed. And as the expert witness testified, firearms often facilitate the sale of drugs.

Defendant argues the consolidation was unduly prejudicial because the evidence would have been inadmissible in separate trials under Evidence Code sections 1101 and 352. We disagree. The evidence was sufficiently similar to be admitted in separate trials to establish defendant's intent and knowledge. Also, the evidence's probative value was not outweighed by its prejudicial impact. Even though defendant did not possess a firearm in the September and December incidents, the firearm would not shock the conscience of jurors as defendant's phone included a photo of a gun, the expert witness testified that drug dealers commonly carried guns for protection, and defense counsel in closing argument conceded that defendant "was doing some dealing to support her personal habit."

Defendant argues it would be prejudicial to introduce evidence of the September and December incidents in a trial on the August incident because the evidence in the August incident was weaker than that in the other incidents. In the other incidents, the methamphetamine was found on her person and in the bedroom where she was located. But in the August incident, the methamphetamine and the handgun were found in Torrez's car while defendant was inside the house.

Contrary to defendant's argument, the evidence in the August incident against her was strong. Defendant's backpack, found on the passenger side floorboard of Torrez's car, contained over 84 grams of methamphetamine, $1,400 in cash, and a loaded handgun. It contained women's jewelry, women's deodorant, and feminine hygiene products. In addition, Torrez, who testified on his own behalf, stated he knew defendant carried guns, he had seen her with a gun, he and defendant had been together for the three weeks prior to their arrest on August 12, often staying in the same hotel rooms, and he saw the gun in the hotel rooms. Introducing evidence of the September and December incidents in a trial of the August incident would not be introducing stronger evidence into a weaker case.

The trial court did not err by consolidating the three cases for trial.

8

## II

*Admission of Uncharged Acts Evidence*

Defendant contends the trial court committed prejudicial error by admitting evidence from the search of the Motel 6 room that showed she had committed uncharged crimes. She argues the evidence was inadmissible propensity evidence under Evidence Code section 1101, and the evidence was unduly prejudicial under Evidence Code section 352.

Evidence of specific instances of uncharged misconduct is not inadmissible when it is relevant to establishing a material fact at issue other than a person's character or disposition, such as the person's intent, motive, or knowledge. (Evid. Code, § 1101, subd. (b); *People v. Ewoldt* (1994) 7 Cal.4th 380, 393.) Such evidence is admissible under subdivision (b) of Evidence Code section 1101 so long as the charged and uncharged crimes are sufficiently similar to support a rational inference of the fact to be established. (*People v. Kipp* (1998) 18 Cal.4th 349, 369.)

The least degree of similarity is required between the charged and uncharged acts to prove intent. (*Ewoldt, supra*, 7 Cal.4th at p. 402.) To be admissible to prove intent, the uncharged act "must be sufficiently similar to the charged offense to support the inference that the defendant probably acted with the same intent in each instance." (*People v. Lindberg* (2008) 45 Cal.4th 1, 23.)

The degree of similarity required between the charged and uncharged acts to prove knowledge depends on the specific knowledge at issue and whether the prior acts tend to prove the knowledge the defendant had at the time of the crime. (*People v. Hendrix* (2013) 214 Cal.App.4th 216, 241.) Where the knowledge at issue can be derived from different experiences, only a general similarity is required. (*People v. Felix* (2019) 41 Cal.App.5th 177, 185.)

In addition to finding the evidence relevant, the trial court must determine whether the uncharged act evidence is unduly prejudicial under Evidence Code section 352. (*Ewoldt, supra*, 7 Cal.4th at p. 404.) The court must examine whether the evidence's probative value is "substantially outweighed by the probability that its admission [would] . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) We review a trial court's admission of uncharged act evidence for an abuse of discretion. (*Lindberg, supra*, 45 Cal.4th at p. 23.)

To prove defendant possessed the methamphetamine for sale, the prosecution had to establish her knowledge and intent. Specifically, the prosecution had to establish she unlawfully possessed a controlled substance, knew of its presence and nature as a controlled substance, and intended to sell it. (*People v. Montero* (2007) 155 Cal.App.4th 1170, 1175-1176; CALCRIM No. 2302.)

In drug offense prosecutions, evidence of prior drug use and prior drug convictions is generally admissible under Evidence Code section 1101, subdivision (b) to show the defendant's knowledge and intent. Such evidence is admissible "to establish that the drugs were possessed for sale rather than for personal use and to prove knowledge of the narcotic nature of the drugs." (*People v. Williams* (2009) 170 Cal.App.4th 587, 607; *People v. Ghebretensae* (2013) 222 Cal.App.4th 741, 754, disapproved on another ground in *People v. Bryant* (2021) 11 Cal.5th 976, 986, fn. 5 [evidence of prior drug sale relevant to show knowledge and intent]; *People v. Pijal* (1973) 33 Cal.App.3d 682, 691 [same].)

Here, the trial court did not abuse its discretion admitting the uncharged act evidence derived from the search of defendant's and Torrez's hotel room on August 12 and 13, 2021. That evidence was sufficiently similar to the charged offenses to establish that defendant knew she possessed a controlled substance and intended to sell it. The items found in the hotel room were similar to those found in defendant's backpack and Torrez's car the night of August 12, 2021. They included a firearm and a magazine, a

10

bag containing what appeared to be methamphetamine, digital scales, cell phones, a backpack containing baggies, cell phones, and a notebook with telephone numbers, as well as women's clothing, beauty supplies, mail addressed to a Zephyr Hills Way residence, and bongs or pipes commonly used to smoke methamphetamine.

By comparison, officers searching Torrez's car at the Zephyr Hills Way residence found a backpack on the passenger side floorboard, and in the backpack found a loaded gun with a magazine, methamphetamine, cash, women's jewelry, women's deodorant, and feminine hygiene products. Officers also found in the car two digital scales, a notebook, and a pipe commonly used to smoke methamphetamine that had a white substance inside. The evidence from the hotel was sufficiently similar to the evidence found in Torrez's car to be admissible to establish defendant's knowledge and intent.

Moreover, the uncharged acts evidence was not unduly prejudicial under Evidence Code section 352. Its probative value was not substantially outweighed by the probability its admission would create a substantial danger of undue prejudice, confusing the issues, or misleading the jury. As already explained, the evidence was probative to establish that defendant knew the material she possessed was a controlled substance and that she intended to sell it. The evidence also established a relationship between defendant and Torrez, connecting her to the items discovered in Torrez's car.

The evidence was not unduly prejudicial. It was not more inflammatory than the evidence of the charged offenses. Both sets of evidence included a firearm and a magazine, large amounts of methamphetamine, and drug paraphernalia indicating an intent to sell. It did not create a danger of misleading the jury or confusing the issues, as the trial court gave a limiting instruction informing the jury that the evidence could be considered only on the issues of knowledge and intent, and it could not be used for any other purpose. That instruction mitigated any prejudicial impact. (*People v. Lewis* (2001) 25 Cal.4th 610, 637.) Presenting the evidence also did not unduly consume trial time.

Defendant contends that the uncharged act evidence was unduly prejudicial because it involved the possession of a gun in addition to possession and knowledge of the narcotics. She argues the jury could have relied on the evidence of the uncharged firearm possession to conclude defendant surrounds herself with deadly weapons and thus has a propensity for violence. However, when weapons are otherwise relevant as circumstantial evidence that the defendant committed the charged offenses but are not the actual weapons used, evidence of such weapons may still be admissible. (*People v. Homick* (2012) 55 Cal.4th 816, 876.) In this case, the jury learned that defendant had a photo of a firearm in her cell phone when she was arrested for the August 12, 2021, incident in addition to the handgun found in her backpack. Evidence of ties to an additional firearm would not uniquely invoke an emotional bias against defendant where the evidence was relevant to her knowledge and intent, where the jury was expressly limited in how it could consider the evidence, and where the expert witness testified that drug dealers often carried firearms for protection.

Defendant further argues the circumstances surrounding the noncharged acts evidence obtained from the hotel were too dissimilar to the circumstances of the charged offenses to be probative on the issues of her intent and knowledge of the gun and drugs found in the August 12, 2021, incident. Neither she nor Torrez were present when officers searched the hotel room, and the room was rented in both of their names. She argues that, by contrast, only Torrez was inside the vehicle when the gun was found within his reach in defendant's backpack, defendant had no interest in Torrez's car, and her recorded conversation with Torrez inside the sheriff's vehicle showed she did not know Torrez had put the gun in her backpack.

The evidence of the recorded conversation does not indicate exactly what Torrez may have put in defendant's backpack, as defendant referred only to "that shit." Even if defendant did not know Torrez had put the gun in her backpack, that point did not establish that she was unaware of the gun being in his or her possession or in the car

before she went inside the house, or that her relationship with Torrez was such that she could not control the gun's possession. Her intent and knowledge were at issue, and the evidence from the hotel search was sufficiently similar for the jury to infer she acted with the same intent and knowledge with Torrez on August 12, 2021, as she had with him in their hotel room.

The trial court did not abuse its discretion admitting the noncharged act evidence found in the hotel room search.

## III

### *Cumulative Error*

Defendant argues the trial court's error in consolidating the separate cases along with its admission of the uncharged act evidence cumulatively prejudiced her and violated her due process rights. Where there is no individual error, however, there is no cumulative error. (*People v. Ramirez* (2022) 79 Cal.App.5th 48, 63, review granted Oct. 12, 2022, S275341.)

## IV

### *On-Bail Enhancements*

Under section 12022.1, subdivision (b), a trial court sentencing on a felony must impose a consecutive two-year enhancement if the defendant committed the felony while she was on bail for another felony. The statute states: "Any person arrested for a secondary offense that was alleged to have been committed while that person was released from custody on a primary offense shall be subject to a penalty enhancement of an additional two years, which shall be served consecutive to any other term imposed by the court." (§ 12022.1, subd. (b).)

For purposes of the statute, a "primary offense" is "a felony offense for which a person has been released from custody on bail or on his or her own recognizance prior to

13

the judgment becoming final[.]" (§ 12022.1, subd. (a)(1).) A "secondary offense" is "a felony offense alleged to have been committed while the person is released from custody for a primary offense." (§ 12022.1, subd. (a)(2).)

The statute is easily applied where the primary offense and the secondary offense each consist of only one felony. The trial court imposes one on-bail enhancement. Questions arise over how many enhancements must be imposed when there is more than one primary or secondary "offense." Such is the case here.

Originally, the prosecution charged defendant with only counts 1 and 2, felon in possession of a firearm and possession of a controlled substance for sale, respectively, both committed on August 12, 2021. Defendant posted bail and was released from custody. While on bail, defendant was arrested twice for possession of a controlled substance for sale, once in September and again in December 2021. At the preliminary hearing on the original complaint, the trial court held defendant over on counts 1 and 2, and it also held her over on a new charge, possession of a controlled substance while armed on August 12, 2021. The prosecution subsequently filed an amended consolidated information that alleged counts 1 and 2, the possession while armed charge as count 3, and the new possession for sale charges as counts 4 and 5. The amended information also alleged that defendant committed counts 4 and 5 while she was released from custody on counts 1, 2, and 3.

The trial court imposed two consecutive on-bail enhancements on defendant, one on count 4 and one on count 5.

Defendant contends the court erred and that we must strike one of her on-bail enhancements because only one enhancement may lawfully be imposed for a single primary *case* no matter how many secondary offenses she committed while on bail. In this instance, that case consisted of counts 1, 2, and 3.

The Attorney General, on the other hand, contends the trial court did not err because defendant committed three primary *offenses*, counts 1, 2, and 3. Section 12022.1

14

by its terms allows one enhancement for each primary "offense," and thus the trial court did not err by imposing two enhancements.

Neither the parties nor we have found a reported case directly on point. But the extant authorities indicate that defendant has the better argument. Although the statute's language, subjecting a defendant to an enhancement if she was arrested for "a secondary offense" while released from custody on "a primary offense," could be interpreted to subject a defendant to an enhancement for each primary and secondary offense charged, the Courts of Appeal have not read the statute so broadly.

This is because under section 1170.1, the determinate sentencing law, there are two kinds of enhancements: those that go to the nature of the offender and those that go to the nature of the offense. (*People v. Coronado* (1995) 12 Cal.4th 145, 156; *People v. Tassell* (1984) 36 Cal.3d 77, 90, overruled on another ground in *Ewoldt, supra*, 7 Cal.4th at p. 401.) At sentencing, an enhancement arising from the circumstances of the crime enhances the several counts, but an enhancement arising from the nature of the offender is added only once as a step in arriving at the aggregate sentence. (*Tassell,* at p. 90.) The on-bail enhancement, like enhancements for prior convictions, goes to the nature of the offender and thus can be added only once. (*Ibid*.)

As a result, courts have uniformly held that where there is only one primary offense, only one on-bail enhancement may be imposed no matter how many *secondary* offenses the defendant is sentenced on in a case. (*People v. Augborne* (2002) 104 Cal.App.4th 362, 377; *People v. McNeely* (1994) 28 Cal.App.4th 739, 743; *People v. Mackabee* (1989) 214 Cal.App.3d 1250, 1262; *People v. Nguyen* (1988) 204 Cal.App.3d 181,196, disapproved on another ground in *Ballard v. Estelle* (9th Cir. 1991) 937 F.2d 435, 458, fn. 6.)

Two reported cases have discussed applying the on-bail enhancement when the defendant committed a secondary offense or offenses while on bail for more than one *primary* offense. In *People v. Warinner* (1988) 200 Cal.App.3d 1352 and *People v.*

*Mackabee, supra*, 214 Cal.App.3d 1250, the courts recognized that the enhancement went to the nature of the person and could be imposed only once. But to meet section 12022.1's terms and further its purpose of punishing and discouraging recidivism, the courts interpreted "a primary offense" to refer to a "case" or a "release from custody" rather than each offense charged in the primary case, and they imposed one enhancement for each case or release. Although neither case expressly addressed the factual situation before us, their reasoning is persuasive.

In *Warinner,* the defendant was charged with burglary and other felonies in each of two separate cases. While on bail, he committed another burglary. (*Warinner, supra*, 200 Cal.App.3d. at p. 1354.) He pleaded guilty to the felonies in the first case and was found guilty of the felonies in the second case and the felony in the third case. He was sentenced on all three cases at the same time. The trial court imposed two on-bail enhancements as part of his aggregate term. (*Ibid*.)

The Court of Appeal affirmed the trial court's judgment. By its language, section 12022.1 permitted the two enhancements imposed. The statute mandates an enhancement where a defendant is released from custody "on a primary offense" and commits another felony. (*Warinner, supra*, 200 Cal.App.3d at pp. 1355-1356.) The court stated, "Although the Legislature did not expressly prescribe the application of section 12022.1 for 'each' primary offense for which a defendant is on bail, a fair reading of the statute compels that result." (*Id*. at p. 1355.)

But the Court of Appeal equated "primary offense" with "case," and it imposed the enhancement based on the defendant's release from custody on a case that had a primary offense. (*Warinner, supra*, 200 Cal.App.3d at p. 1356.) Conforming to *Tassell's* ruling that an on-bail enhancement could be added only once in determining the aggregate sentence, the *Warinner* court concluded that the defendant's sentence could "be enhanced for each pending case from which he was released from custody . . . ." (*Warinner, supra*, 200 Cal.App.3d at p. 1356.) Although the enhancement went to the

nature of the defendant, he could be subject to an on-bail enhancement for each case because a person released from custody on more than one pending case who commits an offense, like a person with two or more prior prison terms, "is more culpable than a person who commits an offense while being out on bail on only one case.  As culpability increases, additional punishment follows.  The purpose of section 12022.1 is to penalize recidivists.  This is accomplished by increasing punishment for one who commits an additional offense while released from custody on earlier offenses." (*Warinner, supra*, 200 Cal.App.3d at p. 1356.)

Although the defendant in *Warinner* committed more than one felony in each of the two prior cases, there is no indication that the Attorney General argued in *Warinner* that the enhancement applies for each primary felony offense in each case, as the Attorney General contends here.  Once the *Warriner* court found a primary offense in each case, it ended its analysis without considering whether the other felonies in each case for which the defendant was on bail were also primary offenses.

A panel of this court followed both *Tassell* and *Warinner* in *Mackabee*.  In that case, the defendant committed four separate felonies over a three-month period.  The last three were each committed while he was released from custody on earlier offenses. (*Mackabee, supra*, 214 Cal.App.3d at p. 1253.)  The trial court imposed six on-bail enhancements.  It imposed the enhancement on each secondary offense for each previous primary offense. (*Id*. at p. 1259.)

This court struck four of the enhancements.  It struck the enhancement imposed on the fourth felony that was based on the third felony because defendant had not been arrested on the third felony when he committed the fourth. (*Mackabee, supra*, 214 Cal.App.3d at pp. 1259-1260.)  Of relevance here, the court struck three of the remaining five enhancements, holding that only one enhancement could be imposed for each of his releases from custody on the defendant's primary offenses. (*Id*. at p. 1260.)

17

The *Mackabee* court agreed with *Tassell* and other authorities that due to the enhancement being based on the nature of the offender, a single primary offense could not support more than one on-bail enhancement. (*Mackabee, supra*, 214 Cal.App.3d at pp. 1261-1262.) But the court also agreed with *Warinner*. *Warriner* would allow two enhancements in the case, one for each of the two primary offenses. (*Id., supra,* 200 Cal.App.3d at pp. 1356-1357.) The court stated: "In *People v. Nguyen,* [*supra,*] 204 Cal.App.3d 181 [], the Fourth District, following *Tassell,* concluded a single primary offense would not support two section 12022.1 enhancements—one for each of two secondary offenses. We agree with *Nguyen.* We also agree with *Warinner* that, just as section 1170.1 does not bar multiple enhancements for separate prior prison terms (§ 667.5), it does not bar multiple enhancements based on *separate releases* on primary offenses." (*Mackabee, supra*, 214 Cal.App.3d at p. 1262, italics added, fn. omitted.)

The Attorney General contends that the holding in *Mackabee* required the trial court here to impose an on-bail enhancement based on each of the primary offenses defendant committed. In a footnote, however, the *Mackabee* court stated it was not addressing the situation before us: "We have no occasion in this case to determine whether multiple enhancements can be imposed where a defendant is simultaneously released on two primary offenses. Here, defendant's releases on two primary offenses were at different times." (*Mackabee, supra*, 214 Cal.App.3d at p. 1262, fn. 6.)

Nonetheless, the reasoning in *Mackabee* and *Warinner* leads us to conclude that defendant in this case is subject to only one on-bail enhancement, not two. Because the enhancement goes to the nature of the person, only one such enhancement may be imposed in a case. Although counts 1 and 2 under the terms of the statute could each qualify as primary offenses, because they were charged as one case from which defendant was released from custody and committed counts 4 and 5, the enhancement may be imposed only once for that case. Otherwise, the enhancement would become one based on the nature or number of offenses committed in one case, something which the

18

determinate sentencing law does not allow.  As we recognized in *Mackabee*, "We must consider section 1170.1 because, 'Statutes must be construed with reference to the system of laws of which they are a part.  [Citation.]'  (*People v. Hernandez* (1988) 46 Cal.3d 194, 201[].)  Moreover, in construing penal statutes, we must give a criminal defendant the benefit of any realistic doubt.  (*People v. Anderson* (1987) 43 Cal.3d 1104, 1145.)" (*Mackabee, supra*, 214 Cal.App.3d at p. 1261.)

Because defendant committed her secondary offenses when she was released from bail on only one case, she is subject to only one on-bail enhancement under section 12022.1.  We will therefore strike one of the two on-bail enhancements.

### DISPOSITION

The on-bail enhancement imposed under section 12202.1 on count 5 is stricken. In all other respects, the judgment is affirmed.  The trial court is directed to prepare and certify an amended abstract of judgment consistent with this opinion and to deliver it to the Department of Corrections and Rehabilitation.

 

HULL, Acting P. J.

We concur:

DUARTE, J.

KEITHLEY, J.*

*  Judge of the Butte County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

19